1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONTE TUMBLING, | ) 1:08cv1801 LJO DLB |
| | ) |
| | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART PLAINTIFF'S |
| | ) MOTION TO COMPEL FURTHER |
| Plaintiff, | ) RESPONSES TO REQUEST FOR |
| | ) INSPECTION OF DOCUMENTS (SET ONE) |
| v. | ) AND FOR SANCTIONS |
| | ) (Document 28) |
| MERCED IRRIGATION DISTRICT, | ) |
| | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART DEFENDANT'S |
| | ) MOTION FOR PROTECTIVE ORDER AND |
| Defendant. | ) FOR AWARD OF EXPENSES |
| | (Document 29) |

Plaintiff LaMonte Tumbling ("Plaintiff") filed a motion to compel further responses to a request for inspection of documents on August 6, 2009. Defendant Merced Irrigation District ("Defendant" or "MID") filed a related motion for protective order on August 7, 2009. The motions were heard on September 25, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Neal Meyers and Matthew Racine appeared on behalf of Defendant. Robert Strickland appeared on behalf of Plaintiff.

## RELEVANT FACTUAL BACKGROUND

Plaintiff filed the present employment discrimination action on November 21, 2008. The complaint states causes of action under Title VII, California's Fair Housing and Employment Act and other federal and state statutes based mainly on allegations of race and gender discrimination by Defendant.

According to the Complaint, MID hired Plaintiff, an African-American male, in January 1995. Plaintiff worked his way up from a Water Order Clerk to Irrigation Order Supervisor, and then to Customer Service Supervisor in charge of both water and electrical services. From 1995 through 2004, MID rated Plaintiff outstanding in his performance reviews. In 2005, Plaintiff was "Supervisor of the Year."

In 2004, MID hired a female employee, "V." Mike Higgins, Plaintiff's immediate supervisor, allegedly had his eye on "V." About five months after "V" started, Higgins took her "under his wing" and began training her to be the Control Room Operator. Higgins had promised this position to Plaintiff before hiring "V."

On or about May 5, 2004, Plaintiff alleges that he observed Mike Higgins with his right hand in "V's" blouse, caressing her breasts. MID ignored the supervisor's sexual misconduct and ratified the inappropriate behavior by failing to discipline Higgins. Higgins threatened Plaintiff's job and threatened to transfer Plaintiff to the Night Watchman job. Higgins also challenged Plaintiff to file suit against him.

On September 17, 2004, Plaintiff attempted to enter the control room. Higgins blocked Plaintiff's entry into the room, grabbed Plaintiff's key from the door and threw it on the floor.

On September 27, 2004, Plaintiff again went to the control room. Higgins blocked Plaintiff's entry and screamed at him.

In 2005, a few hours before MID promoted Plaintiff to Customer Service Supervisor, it promoted "V" to his old position. Plaintiff alleges that a substantial factor in Higgins' decision to promote Plaintiff was to promote "V."

Plaintiff alleges that MID ignored complaints by other employees of workplace hostile environment. For instance, after a female employee, "B", complained about Higgins' conduct, MID involuntarily transferred the complaining employee.

Plaintiff also alleges that MID promoted female employees because of how much they would flirt with and flatter MID supervisors. MID allegedly promoted Cindy LaCava from a meter reader to a mid level MID manager without any competitive application process, testing,

objective evaluation, postings or interviews.  Plaintiff alleges that LaCava flirted with Jem

Brown and went out with him for alcoholic drinks.

In December 2005, when Jem Brown was Plaintiff's supervisor, MID awarded Plaintiff

the "Supervisor of the Year" award.  In May 2006, Brown allegedly called Plaintiff and

Plaintiff's assistant, Linda Davidson, into his office.  Brown asked Plaintiff to create a

procedures manual for all customer service department duties.  Plaintiff said he could not start

working on it for a couple of weeks.  A week later, Brown called another meeting with Davidson

and Plaintiff.  Brown stated that Bob Blum, Director of Administration for MID, had surveyed

other districts and found that Davidson and Plaintiff were underpaid.  Brown allegedly told them

that if they created a procedures manual within two weeks, he would get them the money for

their pay differential.  Brown would not tell Plaintiff how much he was underpaid.

In late March 2006, Plaintiff completed the procedures manual and presented it to Brown.

About a week later, Brown called Plaintiff into his office.  Brown stated that Plaintiff would no

longer be the Supervisor of Customer Service, but would not be losing any pay.  Brown allegedly

showed Plaintiff a chart that would make Cindy La Cava the new manager at pay level 22.  The

same chart showed that Plaintiff's assistant, Linda Davidson, would be the supervisor of electric

customer service at pay level 18.  Plaintiff would become supervisor of water customer service

only and stay at pay level 20.  Plaintiff asked Brown if MID could compensate him at level 22 for

the approximately one year and three months that Plaintiff had performed the job before Brown

took it away from him. Brown refused Plaintiff's request. Plaintiff allegedly "went up the chain

of command" to seek pay parity without success.

In late April 2006, Brown and Blum, MID's head of human resources, allegedly told

Plaintiff that based on how he was reacting, he was not accepting the demotion well. Blum also

allegedly said that MID management made a decision, that Plaintiff had better learn to deal with

it, and that the other option was ugly. Blum also reportedly said that Plaintiff would never know

how this all came about, that Plaintiff better learn to "stay in [his] place," and that there had been

a lot of people protecting him for a long time.  Plaintiff allegedly feared for his physical safety

and worried that Blum and others at MID might retaliate by physical violence against him.

1  Plaintiff alleges that he was afraid to seek legal protection or help because of Blum's threat.  He

2  feared for his and his family's well-being and safety.

3       On June 27, 2007, Blum allegedly told Plaintiff that they did not feel like he was

4  accepting his demotion well.  Blum also told Plaintiff that he was transferring him to a weed

5  sprayer job, handling dangerous and deadly chemicals.

6       On or about July 16, 2007, MID management received an e-mail stating that Higgins was

7  approving pay and time for some employees who did not earn such pay in exchange for receiving

8  favors from them.  Plaintiff alleges that MID management refused to investigate.

9       As of December 2007, MID allegedly refused Plaintiff annual pay increases, stating that

10 he was now a sprayer and would have to wait until all the other sprayers were receiving the same

11 pay before MID would consider giving him another raise.

12      On or about August 15, 2008, Plaintiff first learned that his having reported an alleged

13 theft of water by a member of the Board of Directors might have been a factor in his demotion

14 and removal from management.  Plaintiff alleges that for more than ten years, a Board Member

15 improperly had received water from MID at an in-District rate.

16                        **<ins>RELEVANT PROCEDURAL BACKGROUND</ins>**

17      MID filed an answer to the complaint on December 24, 2008.

18      The Court entered a Scheduling Order on March 25, 2009.  Pursuant to the Scheduling

19 Order, the non-expert discovery deadline is October 30, 2009, and the expert discovery deadline

20 is January 29, 2010.  Trial is scheduled for September 13, 2010.

21      On May 1, 2009, the parties filed a stipulation for a protective order, which was granted

22 by the Court on May 5, 2009.  The protective order encompasses discovery regarding:  (a) any

23 MID current or former employee including, but not limited to, his or her personnel file; (b) any

24 harassment, discrimination, workplace violence and/or retaliation complaint or investigation by

25 or against MID involving any of its former or current employees; or (c) any other confidential

26 personnel, private or confidential information involving a former or current MID employee or

27 applicant for employment.

28

4

1    Plaintiff served a Request for Production of Documents (Set One) on May 3, 2009.

2  Defendant responded on June 5, 2009.  Defendant's response included a privilege log, which was

3  supplemented on June 5, 2009, and updated on July 2, 2009.

4    In a letter dated June 17, 2009, Plaintiff requested that Defendant amend its responses.

5  On June 21, 2009, Plaintiff sent a letter clarifying its Request for Production No. 31.  Plaintiff

6  sent another letter on June 22, 2009, addressing "shortcomings" in Defendant's responses and

7  requesting amended responses.

8    On June 25, 2009, Defendant sent a letter to Plaintiff defending its responses.  In an

9  attempt to resolve the discovery dispute, counsel for the parties participated in a conference call

10  on July 1, 2009.  Defendant sent a follow-up letter dated July 8, 2009, refuting the relevancy of

11  an alleged sexual relationship between Mike Higgins and Veronica Cavazos, and defending the

12  adequacy of the privilege log.

13    On July 30, 2009, Plaintiff sent another letter in an attempt to resolve the discovery

14  dispute.  Defendant responded on August 4, 2009, noting that the parties had exhausted the meet

15  and confer process and suggesting that Plaintiff file a motion to compel.

16    On August 6, 2009, Plaintiff filed the instant motion to compel responses to its request

17  for inspection of documents.  Plaintiff also seeks sanctions.  On August 7, 2009, Defendant filed

18  a related motion for protective order limiting the scope of Plaintiff's discovery requests.

19  Defendant also requests expenses.

20    On September 15, 2009, the parties filed their joint statements of discovery dispute.

21                              **DISCUSSION**

22  **I.    MOTION FOR PROTECTIVE ORDER**

23         A.    Legal Standard-Protective Order

24    Pursuant to Fed. R. Civ. P. 26(c), MID seeks a protective order that: (1) limits the

25  temporal scope of discovery to on or after January 1, 2004; (2) prohibits Plaintiff from seeking

26  discovery relating to his allegations of a sexual relationship between MID employees Michael

27  Higgins and Veronica Cavazos; and (3) prevents Plaintiff's "wholesale" inquiry into personnel

28  information about third-party MID employees and former employees.

1   Fed. R. Civ. P. 26(c) provides that a "court may, for good cause, issue an order to protect

2   a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

3   Protective orders provide a safeguard for parties and other persons in light of the otherwise broad

4   reach of discovery.  Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); United States v.

5   Columbia Broadcasting System, Inc., 666 F.2d 364, 368-369 (9th Cir. 1982).

6          In order to establish good cause for issuance of a protective order, the party seeking

7   protection bears the burden of showing that specific prejudice or harm will result if no protective

8   order is granted.  See Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir.

9   1992) (holding that broad allegations of harm, unsubstantiated by specific examples or

10  articulated reasoning, do not satisfy the Rule 26(c) test); see also San Jose Mercury News, Inc. v.

11  United States Dist. Court, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective

12  order the party must make a particularized showing of good cause with respect to any individual

13  document).  If a court finds particularized harm will result from disclosure of information to the

14  public, it then balances the public and private interests to decide whether a protective order is

15  necessary.  See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3rd Cir. 1995).

16         B.     Analysis

17         1.     Temporal Limitation

18         Plaintiff has requested discovery dating back to 1995.  MID seeks an order limiting

19  Plaintiff's discovery to on or after January 1, 2004.  MID bases this time frame on Plaintiff's

20  allegations that he filed an administrative charge with the EEOC on or about May 27, 2008, and

21  with the California Department of Fair Employment Housing ("DFEH") on June 24, 2008.  MID

22  argues that, at best, Plaintiff can seek recovery under Title VII for adverse employment actions

23  that occurred 180 days prior to May 27, 2008, and under FEHA for adverse employment actions

24  occurring one year prior to June 24, 2008.  42 U.S.C. § 2000e-5(e)(1) (plaintiff must file an

25  administrative charge with the EEOC: (1) within 180 days of the last act of discrimination or (2)

26  within 300 days from the last act of discrimination if a plaintiff first commenced proceedings

27  with a "[s]tate or local agency with authority to grant or seek relief from such practice"); Cal.

28

6

1   Gov. Code § 12960(d) ("No complaint may be filed after the expiration of one year from the date

2   upon which the alleged unlawful practice or refusal to cooperate occurred....").

3        MID further asserts that Plaintiff alleges only two discrete discriminatory acts: (1)

4   demotion in February 2006 (beyond the actionable time period under federal and state law) and

5   (2) transfer from an administrative position to a maintenance position on June 27, 2007 (beyond

6   the actionable time period under Title VII).   MID argues that under both Title VII and state law,

7   discrete discriminatory acts are not actionable if time barred.   Nat'l R.R. Passenger Corp. v.

8   Morgan, 536 U.S. 101, 113 (2002); Holland v. Union Pacific R. Co., 154 Cal.App.4th 940, 945

9   (2007).   MID acknowledges that this limitation does not "bar an employee from using the prior

10   [untimely] acts as background evidence in support of a timely claim."   Morgan, 536 U.S. at 113.

11        However, MID asserts that courts have limited discovery to a "reasonable time."   See,

12   e.g., Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005) (affirming limitation on

13   discovery in discrimination action to complaints filed in department in which plaintiff worked no

14   more than one year before the actions at issue); Manning v. General Motors, 247 F.R.D. 646,

15   652-53 (D.Kan. 2007) (limiting temporal scope of discovery in employment discrimination

16   lawsuit to three years prior and two years after October 2005 liability period; citing additional

17   cases from Kansas district court limiting temporal scope to two and a half or three years prior to

18   discriminatory conduct); Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D.Minn. 1997)

19   (finding ten year period of discovery to be unwarranted and excessive and restricting the time

20   parameters of discovery to include a period beginning two years prior to plaintiff's termination

21   and two years after his separation from employment).   MID points out that limiting Plaintiff's

22   discovery request to January 2004 is more than four years prior to Plaintiff's EEOC and DFEH

23   filings and more than three years prior to the transfer of Plaintiff to his current position.

24        Plaintiff counters that there has been a "history of harassment, discrimination and

25   retaliation that has echoed through the halls of MID for decades" and documents pre-dating

26   January 2004 are relevant and "needed to examine the pattern and practice MID approached such

27   tasks as hiring, firing, promotion, investigation, and discipline of its employees...."  Joint

28   Statement, p. 20.  Plaintiff states that he has alleged a history of harassment, retaliation and

discrimination based upon race and his refusal "to engage and condone the sexual swapping of favors by numerous supervisors with female staff." Joint Statement, p. 20.

The Court finds that Plaintiff's request for discovery dating back to 1995 is overbroad. His complaint does not contain any allegations identifying specific actions that occurred prior to 2004. Accordingly, the Court limits Plaintiff's discovery requests to on or after January 1, 2002.

2.    Allegations of Higgins-Cavazos Relationship

MID seeks a protective order to preclude discovery related to allegations of an affair between Mike Higgins and Veronica Cavazos.[1]  MID argues that such discovery is (1) irrelevant in time; and (2) does not support Plaintiff's legal theories. The Court agrees.

Plaintiff allegedly observed Higgins with his hand on Cavazos' breast on May 5, 2004. In September 2004, Plaintiff again alleges an encounter with Higgins. However, Plaintiff himself alleges that he received outstanding performance reviews in 2004 and was promoted and awarded "Supervisor of the Year" in 2005. Plaintiff does not identify any adverse employment action or discrimination connected to incidents that occurred in 2004. Further, information related to an alleged relationship between Higgins and Cavazos is not relevant to Plaintiff's "paramour" theory of sex/gender discrimination under either a sexually hostile work environment claim or a gender discrimination claim.

a.    Sexually Hostile Work Environment

Plaintiff claims he was subjected to discrimination and harassment because of Higgins' romantic relationship with Cavazos. To support a hostile work environment claim based on a work-place romantic relationship, Plaintiff must show that: "1) [he] was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). "In most instances, workplace affairs in and of themselves have not been found to create a sexually harassing environment." Perron v. Sec'y, Dep't of Health and Human Servs., 2007 WL

---

[1]Mike Higgins has retained legal counsel. Higgins' counsel submitted a letter formally objecting to discovery of any information about his client. Exhibit J to Declaration of Matthew Racine.

1  4219171, *4 (E.D.Cal. Nov. 29, 2007).  An exception to this rule exists if the workplace affair

2  entails "widespread" sexual conduct to which other employees are exposed, such as flagrant

3  boasting about the relationship and/or public displays of affection. Miller v. Dep't of Corrs., 36

4  Cal.4th 446, 471, 30 Cal.Rptr.3d 797, 115 P.3d 77 (2005).

5       Plaintiff allegedly witnessed only one occasion of sexual touching between Higgins and

6  Cavazos.  In fact, he alleges that Higgins and Cavazos kept their relationship behind closed office

7  doors.  Plaintiff also does not identify any "widespread" sexual conduct.  He makes no specific

8  allegations regarding other employees involved in sexual relationships.  Plaintiff's allegation that

9  Cindy LaCava flirted with Jem Brown and they went to drinks once does not equate with

10 "widespread" sexual conduct.

11               b.       Gender Discrimination

12      According to MID, Plaintiff claims gender discrimination based on a "paramour" theory.

13 Under the "paramour" theory of discrimination, a supervisor's relationship with a co-worker

14 coupled with favoritism is used to support a discrimination claim. See Perron, 2007 WL 4219171

15 at *5).  In Perron, the court noted that aside from one decision, "every other federal court which

16 has considered the propriety of the 'paramour' theory has rejected it as a Title VII cause of

17 action." Id.  Courts have reasoned that when an employer discriminates in favor of a paramour,

18 such favoritism disadvantages both sexes for reasons other than gender. Id.  "The analysis

19 changes, however, where favoritism directed from a supervisor to his paramour is transformed

20 from simple favoritism to the concrete bestowal of employment benefits denied other

21 employees." Id.

22      Again, Plaintiff has not alleged denial of an employment benefit because of Higgins'

23 alleged sexual favoritism for Cavazos.  Indeed, Plaintiff alleges that he subsequently received a

24 promotion and recognition as "Supervisor of the Year" and that any alleged adverse employment

25 actions were ordered by others.  Insofar as Plaintiff alleges that he was stuck in an environment

26 where favoritism based upon "paramours" directly denied him benefits, he has not linked the

27 alleged Higgins-Cavazos relationship with any such denials.  Accordingly, Plaintiff's request for

28 information regarding an alleged relationship between Higgins and Cavazos appears irrelevant to

1   his discrimination claims.  A protective order is appropriate to protect MID, Higgins and

2   Cavazos from embarrassment.  Therefore, MID's request for a protective order precluding

3   discovery regarding an alleged sexual relationship between Higgins and Cavazos is GRANTED.

4          3.     Personnel Files

5         MID contends that Plaintiff's requests for the personnel files of Kris Morris, Veronica

6   Cavazos, Mike Higgins, and Belinda Almeida/DeLeon is irrelevant, especially when balanced

7   against privacy rights.

8      <u>Higgins and Cavazos</u>

9         As a preliminary matter, Plaintiff's request for the entire personnel files of Higgins and

10  Cavazos is overbroad.  Moreover, just as Plaintiff's request for information regarding an alleged

11  sexual relationship between Higgins and Cavazos is irrelevant to his claims of discrimination, his

12  requests for their personnel files also is irrelevant.

13        Insofar as Plaintiff raises issues concerning alleged time card fraud, these allegations are

14  not relevant to a claim or defense.  Plaintiff contends that Higgins and Cavazos were paid for

15  hours not worked because they were engaged in a sexual relationship during work hours.

16  However, Plaintiff does not contend that he reported the alleged time card fraud.  He also does

17  not otherwise link the fraud allegations with any alleged adverse employment actions taken

18  against him.  Therefore, MID's request for protective order precluding discovery of Higgins' and

19  Cavazos' personnel files is GRANTED.

20     <u>Almeida/DeLeon</u>

21        Plaintiff's complaint contains no identifiable allegations involving Belinda

22  Almeida/DeLeon.  At oral argument, Plaintiff contended that Higgins forced him to hire

23  Almeida/DeLeon, but failed to link her with any alleged discrimination against him.  Plaintiff

24  admitted that Almeida/DeLeon was hired as his subordinate.  As such, the Court find that the

25  personnel file of Almeida/DeLeon is not relevant to a claim or defense and MID's request for

26  protective order is GRANTED.

27

28

1    Davidson, LaCava, and Morris

2        MID contends that the request for the complete personnel records of Davidson, LaCava

3    and Kris Morris is overly broad in temporal and informational scope.[2]  Federal courts have

4    recognized a person's interest in preserving confidentiality of information contained in his or her

5    personnel files.  Nakagawa v. Regents of University of California, 2008 WL 1808902, *2

6    (N.D.Cal. Apr. 22, 2008).  In Nakagawa, the court found that a plaintiff's original request for

7    "complete" personnel files to be overbroad in every case.  Id. at *3 and n.2.

8        Here, the requests for the entire personnel files of LaCava, Davidson and Morris are

9    overbroad and MID's request for protective order precluding production of their entire personnel

10   files is GRANTED.  MID acknowledges that portions of the personnel files of LaCava and

11   Davidson are relevant to Plaintiff's claims and has produced information from their personnel

12   files, including job descriptions, resumes, job applications, performance evaluations and time

13   cards.

14       As to Kris Morris, Plaintiff contends that at the time of his demotion, she took over a

15   portion of his responsibilities.  Therefore, the Court finds that information in her personnel file

16   may be relevant to a claim or defense.  As set forth in connection with the motion to compel,

17   MID shall be required to produce certain documents from her personnel file.

18       Based on the above, MID's motion for protective order is GRANTED IN PART and

19   DENIED IN PART.  MID's request for an award of attorneys' fees and costs pursuant to Rule

20   37(a)(5)(A) is DENIED.

21   **II.    MOTION TO COMPEL DISCOVERY**

22       A.    Legal Standard-Motion to Compel

23       Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

24           Parties may obtain discovery regarding any matter, not privileged, which is
             relevant to the claim or defense of any party, including the existence,
25           description, nature, custody, condition, and location of any books,
             documents, or other tangible things and the identity and location of
26           persons having knowledge of any discoverable matter.... The information

27   ─────────────────────

28       [2]Higgins, LaCava and Davidson all have separate legal counsel and have objected to production of their
     personnel records.

sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

B.    Analysis

1.    Privilege Log

Plaintiff seeks the production of certain documents identified on MID's privilege log.  In federal question cases such as this, privileges asserted in response to discovery requests are determined under federal law, not the law of the forum state.  Fed.R.Evid. 501; United States v. Zolin, 491 U.S. 554, 562 (1989). Here, MID has asserted attorney client privilege, along with the work product doctrine.

The attorney client privilege protects communications between an attorney and his client. The attorney client privilege governs where "(1) legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at the client's instance, permanently protected, (7) from disclosure by the client or by the legal advisor, (8) unless the protection be waived." Nemirofsky v. Seok Ki Kim, 523 F.Supp.2d 998, 1000 (N.D.Cal. 2007) (internal citations omitted).

In contrast, the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  These materials are discoverable "if: they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Id.

To the extent that the work product contains relevant, nonprivileged facts, the party seeking discovery must show "adequate reasons" why the work product should be subject to discovery.  However, to the extent work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification.  Castaneda v. Burger King Corp., _ F.R.D. _, 2009 WL 2748932, *2 (N.D.Cal. Aug. 19, 2009).

<u>Privilege Log Items at Issue:</u>

<u>Item No. 8</u>:  No. 8 on MID's privilege log contains a general category identifying "various" documents created "since litigation was reasonably anticipated."  MID claims work product and attorney client privilege.  The entry also contains a footnote stating:

> This log entry is made out of an abundance of caution to protect documents created in anticipation of litigation that are responsive to certain of plaintiff's overbroad discovery requests....Once the parties agree on or the court determines the proper scope of discovery, defendant will provide a more specific list of protected documents should it become necessary.

Plaintiff contends that this entry fails to identify any documents or provide a description of documents, preventing both the Court and Plaintiff from assessing the applicability of a privilege or protection.  Plaintiff argues that this violates Fed. R. Civ. P. 26(b)(5)(A), which requires a party claiming a privilege or protection to describe the nature of the documents not produced or disclosed in a manner that will enable other parties to assess the claim.

MID counters that it is has objected to Plaintiff's overbroad discovery requests and when the Court defines the scope of discovery, then MID will provide a more specific list of documents consistent with the Court's order.  MID cites United States v. Philip Morris Inc., 347 F.3d 951, 954 (D.C.Cir. 2003), which provides that "if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections."    Based on MID's objections and the Court's subsequent ruling, Plaintiff's motion to compel discovery in connection with Item No. 8 is DENIED.  As necessary and appropriate, MID will update its privilege log consistent with this order.

<u>Item No. 6</u>

> Confidential Report from Hayhurst & Associates to Ken Robbins and Corbett Browning dated March 17, 2008, described as an "[i]nvestigation of discrimination complaints of Isaias Franco and Lamonte Tumbling."  Defendant asserts attorney-client and work product and indicates a portion was "redacted due to privacy and confidentiality concerns."

Plaintiff contends that MID produced the report with numerous redactions without any explanation or justification.  Plaintiff argues that in an employment discrimination lawsuit based on hostile work environment, the adequacy of the employer's investigation of the employee's

1 initial complaints could be a critical issue if the employer chooses to defend by establishing that

2 it took reasonable corrective or remedial action.  Plaintiff indicates that he has causes of action

3 based on hostile work environment and failure to take corrective and remedial actions that the

4 report may evidence.  Plaintiff also contends that the report was not prepared by an attorney and

5 the factual information is not privileged.

6      MID responds that it hired Hayhurst to explore separate allegations of discrimination

7 made by Plaintiff and by Isaias Franco at the end of 2007.  Hayhurst included the results of both

8 investigations in a single report.  MID claims that it produced all portions of the report and

9 interview notes related to Plaintiff.  The remaining portions of the report were redacted in order

10 to protect Mr. Franco's privacy rights.  MID informed Plaintiff that if Franco (a former employee

11 and friend of Plaintiff) consented, then it would release the redacted portions.  Plaintiff advised

12 MID that Franco would provide consent, but he did not.  MID further argues that the

13 investigation of Franco's allegations are irrelevant to Plaintiff's claims.

14      Plaintiff's motion to compel production of Item No. 6 is DENIED at this time.  However,

15 the parties are directed to send a joint letter by certified mail to Mr. Franco informing him of the

16 instant lawsuit and the request for release of the investigation report.  At a minimum, the joint

17 letter should include a form that permits Mr. Franco to object or consent in writing to release of

18 the investigation report by MID to Plaintiff's counsel.  The joint letter also should provide Mr.

19 Franco a deadline to respond and should inform him that if he does not respond or return the

20 form by the specified deadline, then the report will be released.

21 Item No. 7

22      Described as: "Initial Draft of Pending Investigation Report regarding complaints
submitted December 9, 2008, LaCava and Davidson of hostile work environment created
23 by LaMonte Tumbling; all communications related to the investigation" prepared by
Trudy Largent to Corbett Browning, MID general counsel.  Defendant asserts attorney-
24 client privilege, work product, privacy and confidentiality.

25      Plaintiff reports that he filed suit on November 28, 2008.  In response to discovery

26 requests, MID served a response on June 5, 2009.  Three days later, on June 8, 2009, MID

27 presented a letter to Plaintiff's counsel, claiming to be a complaint of sexual harassment by

28

1  LaCava, which MID received on December 9, 2008.  Plaintiff asserts that he is entitled to all

2  documents concerning the allegations against him.

3        MID reports that LaCava and Davidson claim to have suffered a hostile work

4  environment created by Plaintiff and have expressed potential claims against MID.  MID states

5  that it is required to investigate the complaints it receives.  Defense counsel reports that he is not

6  involved in the investigation of the LaCava and Davidson claims, but understands that the

7  investigation is not complete and is being prepared in reasonable anticipation of potential

8  litigation by LaCava and Davidson against MID.  MID is claiming work product and attorney-

9  client privileges because MID has yet to assert the adequacy of the investigation as an affirmative

10  defense.

11        The Court finds that MID is entitled to complete its ongoing investigation.  Accordingly,

12  Plaintiff's motion to compel production of Item No. 7 is DENIED WITHOUT PREJUDICE.  If

13  MID does not produce the report at the conclusion of the investigation, then Plaintiff may revisit

14  the issue of its discoverability.

15  Item No. 2

16        Described as: "Notes of BID Board of Directors Meeting" dated November 6, 2007, and
   prepared by Ted Selb, (retired) Deputy GM of MID, regarding various subject matters,
17  including discrimination complaints by Isaias Franco and Lamonte Tumbling.  Further
   described as "Board member notes of executive session and discussions with counsel."
18  MID claims attorney-client privilege.

19        At the hearing on the instant motion, MID agreed to produce Mr. Selb's notes.

20  Accordingly, Plaintiff's motion to compel regarding Item No. 2 is DENIED AS MOOT.

21  Item No. 3

22        Described as: "Investigation memorandum" regarding timecard fraud accusations, dated
   August 7, 2007, and prepared by Masson, Robbins Gnass & Browning for the MID Board
23  of Directors.  MID claims attorney-client and work product.

24        MID explains that the investigation at issue was in response to anonymous e-mail dated

25  July 16, 2007, claiming that Higgins was approving time not worked by Cavazos.  MID argues

26  that there is no evidence that Plaintiff made this anonymous complaint and therefore whatever

27  response taken by MID to the complaint is irrelevant to Plaintiff's allegations of race and gender

28

1  discrimination.  The Court agrees.  Plaintiff's motion to compel production of Item No. 3 is

2  DENIED.

3  //

4  //

5  Item No. 4

6      Described as: "Attorney Work Product Memorandum" dated December 31, 2008, and
       prepared by Corbett Browning, outside general counsel to MID, regarding "Plaintiff
7      whistleblower allegations re water rates."  MID claims attorney-client and work product.

8      Plaintiff has asserted a whistleblower claim in this matter related to water rates charged to

9  a MID Board member.  MID indicates that an investigation was conducted by MID's general

10 counsel in response to Plaintiff's allegations of whistleblower retaliation initiated after Plaintiff

11 filed his complaint in federal court.  According to MID, it was prepared in anticipation of

12 litigation to assist in MID's defense and is protected from disclosure as work product.

13     The Court finds that the memorandum is entitled to work product protection.

14 Accordingly, Plaintiff's motion to compel discovery of Item No. 4 is DENIED.

15     2.     Requests for Production of Documents

16     By the protective order, the Court has limited the temporal scope of discovery to on or

17 after January 1, 2002, and prohibited Plaintiff from seeking discovery relating to his allegations

18 of a sexual relationship between MID employees Higgins and Cavazos.  The Court also has

19 prohibited Plaintiff's wholesale inquiry into personnel information about third-party MID

20 employees and former employees.  These limitations apply to Plaintiff's requests for production

21 of documents.

22     Specific Requests at Issue

23 No. 2      The Personnel File, and all portions and each subfile for Mike Higgins.

24     As discussed in connection with the motion for protective order, the personnel file of

25 Higgins is not relevant to a claim or defense.  Plaintiff's motion to compel responses to Request

26 for Production of Documents No. 2 is DENIED.

27 No. 3      The Personnel File, and all portions and each subfile for Veronica Cavazos.

28

1      As discussed in connection with the motion for protective order, the personnel file of

2  Cavazos is not relevant to a claim or defense.  Plaintiff's motion to compel responses to Request

3  for Production of Documents No. 3 is DENIED.

4  No. 4            The Personnel File, and all portions and each subfile for Cindy La Cava.

5  No. 5            The Personnel File, and all portions and each subfile for Linda Davidson.

6  No. 6            The Personnel File, and all portions and each subfile for Kris Morris.

7      Plaintiff's requests Nos 4, 5 and 6 for entire personnel files is DENIED as overbroad.

8  However, subject to the time limitations established by the Court and to the extent that they exist,

9  MID shall produce the following types of documents from the personnel files of LaCava,

10 Davidson and Morris: (1) qualifications; (2) positions held; (3) resumes; (4) job applications; (5)

11 training; (6) job experience related to their qualifications; (7) complaints, including complaints

12 and/or investigations about complaints that were unfounded; (8) internal investigations regarding

13 job performance; (9) performance evaluations; (10) disciplinary actions; and (11) promotions.

14 No. 7            All DOCUMENTS or COMMUNICATIONS that demonstrate the pay levels for
                    positions held by (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins; (c) Veronica
15                  Cavazos; (d) Cindy La Cava: and (e) Linda Davidson; (f) Kris Morris; for each
                    year from 1995 to present.
16
17     MID reports that it produced a categorized list of the step pay scales for non-bargaining

18 unit positions from January 1, 2004, to the present.  The pay levels for positions held by Plaintiff,

19 LaCava, Davidson and Morris are relevant to Plaintiff's claims.  MID shall produce documents

20 that demonstrate the pay levels for Plaintiff, LaCava, Davidson and Morris dating from January

21 1, 2002 to the present.  For reasons previously discussed, the pay levels for Higgins and Cavazos

22 are not relevant to a claim or defense.  Accordingly, Plaintiff's motion to compel a response to

23 request No. 7 is GRANTED IN PART and DENIED IN PART.

24 No. 8            All DOCUMENTS or COMMUNICATIONS that demonstrate the pay received
                    by (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins; (c) Veronica Cavazos; (d)
25                  Cindy La Cava; and (e) Belinda Almeida; (f) Linda Davidson; (g) Kris Morris; for
                    each year from 1995 to present per pay period.

26     For reasons previously discussed, Plaintiff's request for production No.8 related to

27 Higgins, Cavazos and Almeida/DeLeon is DENIED.  However, subject to the time limitation

28

1    established by the Court, MID shall produce documents from the personnel files of Plaintiff,

2    LaCava, Davidson and Morris showing increases in salary.

3    <u>No. 12</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of employment that
4                         you considered for **Mike Higgins** as a candidate for any position he has sought at
                          MERCED IRRIGATION DISTRICT from 1995 to present.

5

6    <u>No. 13</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of employment that
7                         you considered for **Veronica Cavazos** as a candidate for any position she has
                          sought at MERCED IRRIGATION DISTRICT from 1995 to present.

8    <u>No. 14</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of employment that
9                         you considered for **Cindy LaCava** as a candidate for any position she has sought
                          at MERCED IRRIGATION DISTRICT from 1995 to present.

10

11   <u>No. 15</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of
12                        employment that you considered for **Belinda Almeida** as a candidate for
                          any position she has sought at MERCED IRRIGATION DISTRICT from
13                        1995 to present.

14   <u>No. 16</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of
15                        employment that you considered for **Linda Davidson** as a candidate for
                          any position she has sought at MERCED IRRIGATION DISTRICT from
16                        1995 to present.

17   <u>No. 17</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                          analysis, review, consideration, or discussion of any position of employment that
18                        you considered for **Kris Morris** as a candidate for any position she has sought at
                          MERCED IRRIGATION DISTRICT from 1995 to present.

19          For the reasons previously stated, Plaintiff's requests Nos. 12, 13 and 15 as to Higgins,

20   Cavazos and Almeida/DeLeon are DENIED as irrelevant.

21          Plaintiff's motion to compel regarding requests Nos. 14, 16 and 17 is DENIED as

22   duplicative of his previous requests for documents from the personnel files of LaCava, Davidson

23   and Morris.  However, to the extent that documents exist outside their personnel files regarding

24   any applications, promotions or refusals of positions, MID shall produce such documents subject

25   to the time and scope limitations established in this order.

26   <u>No. 18</u>              All DOCUMENTS or COMMUNICATIONS that comprise any part of the Job
                          Description for each of the employment positions at MERCED IRRIGATION
27                        DISTRICT in the office and in the field applicable for the time period from 1995
                          to present.

28

1    Plaintiff's request for the job descriptions of each position at MID is overbroad.

2  However, MID shall produce Customer Service Department Job Descriptions from January 1,

3  2002, to the present.  With respect to other jobs at MID, MID shall produce such job descriptions

4  as of June 28, 2007, the date of Plaintiff's alleged job action and move to spray rig operator.

5
6   No. 19    All DOCUMENTS or COMMUNICATIONS that comprise any part of the Job
           Description for each of the position at MERCED IRRIGATION DISTRICT was
           considered for, filled by or for sought by (a) Plaintiff LaMonte Tumbling; (b)
           Mike Higgins; (c) Veronica Cavazos; (d) Cindy La Cava; (e) Belinda Almeida; (f)
7           Linda Davidson; (g) Kris Morris.

8    Plaintiff's motion to compel No. 19 regarding the job descriptions of Higgins, Cavazos

9  and Almeida/DeLeon is DENIED as irrelevant to a claim or defense.  As to the remainder of

10  Plaintiff's request, it appears to be resolved by request No. 18.

11  No. 20    All DOCUMENTS or COMMUNICATIONS that comprise any part of the
           interview process, testing, checking qualifications, and/or prior work performance
12           for the positions at MERCED IRRIGATION DISTRICT was considered for, filled
           by or for sought by (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins; (c)
13           Veronica Cavazos; (d) Cindy La Cava; (e) Belinda Almeida; (f) Linda Davidson;
           (g) Kris Morris from 1995 to present.
14
15    Subject to prior limitations, Plaintiff's motion to compel related to request No. 20 is

16  DENIED as duplicative.

17  No. 21    All DOCUMENTS or COMMUNICATIONS that comprise any part of the job
           announcement or other form of job offering for the position which MERCED
           IRRIGATION DISTRICT considered as a candidate, filled by or sought by (a)
18           Plaintiff LaMonte Tumbling; (b) Mike Higgins; (c) Veronica Cavazos; (d) Cindy
           La Cava; (e) Belinda Almeida; (t) Linda Davidson; (g) Kris Morris from 1995 to
19           present.

20    Subject to the time limitation established by the Court and to the extent they exist, MID

21  shall produce responsive documents as to LaCava, Davidson and Morris.  The remainder of

22  Plaintiff's motion to compel related to request No. 21 is DENIED.

23  No. 22    All DOCUMENTS or COMMUNICATIONS that comprise any part of the job
           performance review or evaluation for any position held by (a) Plaintiff LaMonte
24           Tumbling; (b) Mike Higgins; (c) Veronica Cavazos; (d) Cindy La Cava; (e)
           Belinda Almeida; (f) Linda Davidson; (g) Kris Morris from 1995 to present.
25
26    As to Plaintiff, LaCava, Davidson and Morris, Plaintiff's motion to compel regarding

   request No. 22 is DENIED as duplicative.  As to Higgins, Cavazos and Almeida, Plaintiff's
27
   motion to compel a response to request No. 22 is DENIED as irrelevant.
28

No. 25          All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                analysis of the job functions, specifically including the essential job functions for
                all positions held or sought by (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins;
                (c) Veronica Cavazos; (d) Cindy La Cava; (e) Belinda Almeida; (f) Linda
                Davidson; (g) Kris Morris at MERCED IRRIGATION DISTRICT from 1995 to
                present.

    As to Plaintiff, LaCava, Davidson and Morris, Plaintiff's motion to compel regarding

request No. 25 is DENIED as duplicative of request No. 18.  As to Higgins, Cavazos and

Almeida, Plaintiff's motion to compel a response to request No. 25 is DENIED as irrelevant.

No. 26          All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                employment awards for employees of MID from 1995 to present, including
                employee and/or supervisor of the year awards.

    Plaintiff's request is overbroad and DENIED.  However, subject to the established time

limitation and to the extent they exist, MID shall produce responsive documents regarding

employee and supervisor of the year awards.

No. 27          All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                employment awards given to (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins;
                (c) Veronica Cavazos; (d) Cindy La Cava; (e) Belinda Almeida; (f) Linda
                Davidson; (g) Kris Morris at MERCED IRRIGATION DISTRICT from 1995 to
                present.

    Plaintiff's motion to compel regarding request No. 27 is DENIED as duplicative.

No. 30          All DOCUMENTS or COMMUNICATIONS that comprise any part of the
                communication of any part of the employment rules for the position which was
                being worked by (a) Plaintiff LaMonte Tumbling; (b) Mike Higgins; (c) Veronica
                Cavazos; (d) Cindy La Cava; (e) Belinda Almeida; (f) Linda Davidson; (g) Kris
                Morris at MERCED IRRIGATION DISTRICT from 1995 to present.

    Plaintiff's request is overbroad.  At the hearing, MID indicated that it has produced all

MID personnel rules, including its harassment policies.  Accordingly, Plaintiff's motion to

compel regarding request No. 30 is DENIED.

No. 31          All DOCUMENTS or COMMUNICATIONS that reflect any report, observation,
                investigation, and/or complaint of an unusual relationship, a romantic
                relationship, and/or a sexual relationship between Mike Higgins and any female
                employee including Veronica Cavazos.

    For the reasons identified in connection with MID's motion for protective order,

Plaintiff's motion to compel a response to Request for Production No. 31 is DENIED.

No. 32          All DOCUMENTS or COMMUNICATIONS that reflect the hours worked and
                time away from the job by Veronica Cavazos for the years 2002 to present.

No. 33      All DOCUMENTS or COMMUNICATIONS that reflect the hours worked and time away from the job by Mike Higgins for the years 2002 to present.

No. 34      All DOCUMENTS or COMMUNICATIONS that reflect the absences from work of Veronica Cavazos from 2002 to present.

No. 35      All DOCUMENTS or COMMUNICATIONS that reflect the absences from work of Mike Higgins from 2002 to present.

No. 36      All DOCUMENTS or COMMUNICATIONS that reflect the time at work of Veronica Cavazos, including any and all time cards, from 2002 to present.

For the reasons discussed in connection with MID's motion for protective order, Plaintiff's motion to compel responses to Request for Production of Documents Nos. 32, 33, 34, 35 and 36 is DENIED.

No. 37      All DOCUMENTS or COMMUNICATIONS that reflect the racial, gender and religious background for the employees of MERCED IRRIGATION DISTRICT, such as an EEO 1, EEO or similar document, from 1995 to present.

Plaintiff's request is overbroad. His request for production of documents related to religion is DENIED as irrelevant. As to race and gender, MID indicated at the hearing that it has produced an EEO 4 form, which includes race and/or gender. Accordingly, Plaintiff's motion to compel responses to request No. 37 regarding race and gender is DENIED AS MOOT.

No. 38      All DOCUMENTS or COMMUNICATIONS that reflect the racial, gender and religious background for the employees of MERCED IRRIGATION DISTRICT from 1995 to present.

Plaintiff's request is overbroad. His motion to compel a response to its request for production of documents related to religion is DENIED as irrelevant. As to race and gender, MID indicated at the hearing that it has produced an EEO 4 form, which includes race and/or gender. Accordingly, Plaintiff's motion to compel responses to request No. 38 is DENIED AS MOOT.

No. 39      All DOCUMENTS or COMMUNICATIONS that reflect complaints by any employee, in any form, of racial based discrimination, harassment, or demeaning comments from 1995 to present.

No. 40      All DOCUMENTS or COMMUNICATIONS that reflect complaints by any employee, in any form, of gender discrimination, harassment. or demeaning comments from 1995 to present.

In the joint statement, MID indicated that it had produced additional documentation relating to complaints for age discrimination and family leave act violations made by MID

1  employees to the California Department of Fair Employment and Housing.  MID reported that

2  two employees of MID recently made complaints to the MID Board and to MID management

3  that are responsive to this request.  MID expressed its understanding that one of the

4  complainants, Rodrigo Flores, is represented by Mr. Tumbling's counsel in another lawsuit

5  recently filed against MID.

6          At the hearing, MID agreed to check back to 2002 to make sure it is fully responsive.

7  Accordingly, Plaintiff's motion to compel related to requests Nos. 39 and 40 is DENIED AS

8  MOOT.

9  <u>No. 42</u>          All DOCUMENTS or COMMUNICATIONS that reflect any promotions of Linda
                    Davidson and Kris Morris at MERCED IRRIGATION DISTRICT.

10

11 <u>No. 43</u>          All DOCUMENTS or COMMUNICATIONS that reflect the planning,
                    consideration, and/or applications for promotion of Linda Davidson and Kris
                    Morris and/or the demotion/transfer of La Monte Tumbling on or about June 27th

12                  2007 at MERCED IRRIGATION DISTRICT.

13         These requests are duplicative and/or covered by previous requests.  Accordingly,

14 Plaintiff's motion to compel responses to requests Nos. 42 and 43 is DENIED.

15 <u>No. 45</u>          All DOCUMENTS or COMMUNICATIONS that reflect comments on the
                    performance of La Monte Tumbling by any other employee, manager, supervisor,

16                  or by any grower or customer at any time while he was employed at MERCED
                    IRRIGATON [sic] DISTRICT.

17

18         Plaintiff's request is overbroad.  At the hearing, the parties agreed that MID does not have

19 to produce order forms submitted by a grower or customer.  Accordingly, MID shall produce

20 responsive documents consistent with the time and scope limitations established in this order.

21 <u>No. 46</u>          All DOCUMENTS or COMMUNICATIONS that reflect comments on the
                    performance of Mike Higgins by any other employee or by any grower or
                    customer while he was employed at MERCED IRRIGATION DISTRICT.

22

23 <u>No. 47</u>          All DOCUMENTS or COMMUNICATIONS that reflect comments on the
                    performance of Veronica Cavazos by any other employee, supervisor, or by any
                    grower or customer while he was employed at MERCED IRRIGATION

24                  DISTRICT.

25         For the reasons identified in connection with the motion for protective order, Plaintiff's

26 motion to compel responses to requests Nos. 46 and 47 is DENIED.

27 <u>No. 48</u>          All DOCUMENTS or COMMUNICATIONS that reflect comments on the
                    performance of Cindy La Cava by any other employee, supervisor, or by any

28

grower or customer while she was employed at MERCED IRRIGATION DISTRICT.

Subject to the time and scope limitations identified in this order, Plaintiff's motion to compel regarding request No. 48 is GRANTED.

No. 49        All DOCUMENTS or COMMUNICATIONS that reflect or refer to reorganization plans involving any of the employees, managers, or supervisors, of MERCED IRRIGATION DISTRICT.

At the hearing, the parties agreed that MID would produce an organization chart as of June 28, 2007.  Additionally, MID shall produce Customer Services Reorganization documents from January 1, 2002, to the present.  Therefore, Plaintiff's motion to compel related to request No. 49 is DENIED AS MOOT.

No. 52        All DOCUMENTS or COMMUNICATIONS that reflect the layout of the MID offices and/or properties from 1995 to present.

At the hearing, MID indicated that it had produced the layout of the offices.  MID cannot locate any other responsive documents.  Accordingly, Plaintiff's motion to compel related to request No. 52 is DENIED AS MOOT.

No. 55        All DOCUMENTS or COMMUNICATIONS that reflect any investigation, questioning and/or information from anyone regarding complaints of LaMonte Tumbling.

MID has agreed to produce reports by L.B. Hayhurst & Associates dated March 17, 2008, (redacted to exclude another complainant investigation) and September 19, 2008, and a report by Trudy Largent & Associates, Consulting, dated January 11, 2009.  According to MID's response, except for certain redactions based on third-party privacy and objections based on privilege and work-product, reports related to Plaintiff's complaint, including interview notes of MID employees, were produced.  Therefore, Plaintiff's motion to compel a response to request No. 55 is DENIED.

No. 56        All DOCUMENTS or COMMUNICATIONS that reflect any statements taken by MERCED IRRIGATION DISTRICT or its agents or employees or attributed to LaMonte Tumbling.

Based on MID's response to this request, it appears that MID has produced responsive documents not subject to redaction, privilege or work product protections.  Further, at the hearing, MID indicated that Plaintiff made a statement as part of the time card fraud

investigation, and to the extent that there is a document reflecting such statement, MID has

agreed to produce it.  Accordingly, Plaintiff's motion to compel responses to request No. 56 is

DENIED AS MOOT.

No. 57          All DOCUMENTS or COMMUNICATIONS that reflect any complaints of racial,
                gender or other form of unlawful discrimination, harassment, retaliation against
                the MERCED IRRIGATION DISTRICT, any of the managers or supervisors of
                the MERCED IRRIGATION DISTRICT, and or other employees while LaMonte
                Tumbling was employed at MERCED IRRIGATION DISTRICT.

        Plaintiff's motion to compel a response to request No. 57 is DENIED as duplicative.

No. 58          All DOCUMENTS or COMMUNICATIONS that reflect any investigation,
                questioning and/or information from anyone regarding complaints of racial,
                gender or other form of unlawful discrimination at MERCED IRRIGATION
                DISTRICT from 1990 to present.

        MID admitted that it initially limited its response to "any documents involving any other

similar gender based complaints of sexual favoritism or race discrimination as alleged in

plaintiff's complaint."  MID has agreed to produce complaints made by MID employees to

DFEH, along with two recent complaints made to MID's Board.  Accordingly, Plaintiff's motion

to compel is DENIED AS MOOT.  Further, the request is duplicative of previous requests and

also is DENIED as duplicative.

No. 59          All computers, including any drives, memory and/or printouts, seized by
                MERCED IRRIGATION DISTRICT at the Franklin Yard Pump Department in
                the year 2008 or 2009, including the hard drives of said computers.

No. 60          All computers, including any drives, memory and/or printouts from computers
                used by, or assigned to Mike Higgins, seized by MERCED IRRIGATION
                DISTRICT, including the hard drives of said computers.

        At the hearing, Plaintiff indicated a willingness to continue meet and confer efforts to

resolve these requests.  Accordingly, Plaintiff's motion to compel responses to requests Nos. 59

and 60 is DENIED WITHOUT PREJUDICE.

No. 62          All DOCUMENTS or COMMUNICATIONS that reflect any investigation into
                claims attributed to LaMonte Tumbling charging theft of water or illegally
                reduced water rates for a parcel which was owned, rented, or operated by any
                member of the Board of Directors.

No. 63              All DOCUMENTS or COMMUNICATIONS that reflect each parcel
                    served by any delivery of water by MID to that parcel which was owned,
                    rented, leased, and/or operated by a member of the Board of Directors
                    and/or any entity of which a Director and/or member of a Director's family
                    held any ownership interest.

1   As MID points out, Plaintiff's complaint relates to only one Board member, Director

2   Pellissier.  As such, information relating to other members of the Board of Directors is irrelevant

3   to a claim or defense regarding the appropriateness of rates charged to Director Pellesier.  As

4   MID reports that it has produced documents regarding parcels and water files related to Director

5   Pellissier, Plaintiff's motion to compel regarding requests Nos. 62 and 63 is DENIED AS

6   MOOT.

7   No. 64          All DOCUMENTS or COMMUNICATIONS that reflect each investigation that
                    was performed by Lonny Hayhurst, MERCED IRRIGTION [sic] DISTRICT,
8                   Mason, Robbins, Browning & Goodwin Law Firm, Daley & Heft law Firm and/or
                    any person representing or hired by them into and/or by complaints of
9                   discrimination, harassment, retaliation, or complaints relating to the conduct of
                    LaMonte Tumbling.
10
11  MID indicates that the reports of interviews, including all investigations by Lonnie

12  Hayhurst and Trudy Largent were produced to Plaintiff with the exception of the areas redacted

13  to protect third-party privacy and objections based on privilege and work product.  MID further

14  notes that there is an ongoing investigation by Trudy Largent into accusations by LaCava and

15  Davidson.  These items have been addressed in connection with previous requests for production

16  of items Nos 6 and 7 of the privilege log.

17  No. 65          All DOCUMENTS or COMMUNICATIONS that reflect each investigation that
                    was performed by Lonny Hayhurst, MERCED IRRIGATION DISTRICT, Mason,
18                  Robbins, Browning & Goodwin Law Firm, Daley & Heft law Firm and/or any
                    person representing or hired by them into and/or by complaints of discrimination,
19                  harassment, retaliation, or complaints relating to the conduct of Mike Higgins.

20  No. 66          All DOCUMENTS or COMMUNICATIONS that reflect each investigation that
                    was performed by Lonny Hayhurst, MERCED IRRIGATION DISTRICT, Mason,
21                  Robbins, Browning & Goodwin Law Firm, Daley & Heft law Firm and/or any
                    person representing or hired by them into and/or by complaints of discrimination,
22                  harassment, retaliation, or complaints relating to the conduct of Veronica
                    Cavazos.

23  For the reasons discussed in connection with MID's motion for protective order,

24  Plaintiff's motion to compel responses to requests Nos. 65 and 66 is DENIED.

25  No. 67          All DOCUMENTS or COMMUNICATIONS that reflect each investigation that
                    was performed by Lonny Hayhurst, MERCED IRRIGATION DISTRICT, Mason,
26                  Robbins, Browning & Goodwin Law Firm, Daley & Heft law Firm and/or any
                    person representing or hired by them into and/or by complaints of discrimination,
27                  harassment, retaliation, or complaints relating to the conduct of Cindy La Cava.

28

No. 68          All DOCUMENTS or COMMUNICATIONS that reflect each investigation that was performed by Lonny Hayhurst, MERCED IRRIGATION DISTRICT, Mason, Robbins, Browning & Goodwin Law Firm, Daley & Heft law Firm and/or any person representing or hired by them into and/or by complaints of discrimination, harassment, retaliation, or complaints relating to the conduct of Linda Davidson.

Requests Nos. 67 and 68 have been addressed in connection with privilege log item No. 7.  MID's investigation of complaints by LaCava and Davidson is ongoing.  The Court reiterates that MID is entitled to complete its investigation.  Accordingly, Plaintiff's motion to compel responses to requests Nos. 67 and 68 is DENIED WITHOUT PREJUDICE.

### ORDER

Based on the above discussion, Plaintiff's motion to compel responses to the Request for Production of Documents is GRANTED IN PART and DENIED IN PART.  Within twenty (20) days of the date of this order, MID shall provide further responses or notify Plaintiff that there are no further responses to the discovery at issue.  Plaintiff's corresponding request for an award of attorneys' fees and costs pursuant to Rule 37(a)(5)(A) is DENIED.

MID's related motion for protective is GRANTED IN PART and DENIED IN PART. MID's corresponding request for expenses is DENIED.

IT IS SO ORDERED.

**Dated:     October 13, 2009**              _____/s/ **Dennis L. Beck**_____
                                                    UNITED STATES MAGISTRATE JUDGE