# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LAMONTE TUMBLING, | ) | 1:08cv1801 LJO DLB |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S MOTION |
| | ) | TO MODIFY THE PROTECTIVE ORDER |
| Plaintiff, | ) | FILED ON OCTOBER 13, 2009 |
| | ) | (Documents 44, 50) |
| v. | ) | |
| | ) | |
| MERCED IRRIGATION DISTRICT, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

On November 11, 2009, Plaintiff LaMonte Tumbling ("Plaintiff") filed the instant motion to modify the Court's order of October 13, 2009, which prohibited Plaintiff from seeking discovery relating to allegations of a sexual relationship between Merced Irrigation District employees Michael Higgins and Veronica Cavazos. The matter was heard on December 10, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Dean Gordon and Robert Strickland appeared on behalf of Plaintiff. Neal Meyers appeared on behalf of Defendant Merced Irrigation District ("Defendant" or "MID").

## **BACKGROUND**

Plaintiff filed the present employment discrimination action on November 21, 2008. The complaint contains causes of action for race and gender discrimination under Title VII, race and gender discrimination under California's Fair Housing and Employment Act ("FEHA"), retaliation for protected activity under Title VII and FEHA, failure to prevent discrimination and harassment

1

1  under FEHA, whistleblower retaliation and race discrimination in violation of 42 U.S.C. § 1981 *et*
2  *seq*.
3        On May 5, 2009, pursuant to the parties' stipulation, the Court entered a protective order.
4  The order encompasses discovery regarding:  (a) any MID current or former employee including,
5  but not limited to, his or her personnel file; (b) any harassment, discrimination, workplace violence
6  and/or retaliation complaint or investigation by or against MID involving any of its former or
7  current employees; or (c) any other confidential personnel, private or confidential information
8  involving a former or current MID employee or applicant for employment.
9        Plaintiff served a Request for Production of Documents (Set One) on May 3, 2009.  MID
10  responded on June 5, 2009.  The parties disagreed as to the adequacy of MID's responses and
11  engaged in efforts to resolve the disagreement.  No resolution was reached.
12        On August 6, 2009, Plaintiff filed a motion to compel responses to its request for
13  documents. On August 7, 2009, MID filed a related motion for protective order limiting the
14  scope of Plaintiff's discovery requests.
15        Following a hearing on the motions, the Court issued an order on October 13, 2009.  In
16  part, the order denied Plaintiff discovery into allegations of an affair between MID employees
17  Mike Higgins and Veronica Cavazos on the basis that such information would cause
18  embarrassment and was not relevant under a sexually hostile work environment or "paramour"
19  theory of recovery.
20        After further investigation, Plaintiff now believes that there is evidence establishing good
21  cause to the modify the October 13, 2009, order. Accordingly, on November 11, 2009, Plaintiff
22  filed a motion to modify the order. On December 7, 2009, the parties filed a joint statement of
23  discovery dispute.

### DISCUSSION

**I.  MOTION TO MODIFY PROTECTIVE ORDER**

    A.    <u>Legal Standard</u>

A district court has the power to modify or lift a protective order that it has entered.
Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc., 62 F.3d 1217, 1219

(9th Cir. 1995). The issue is left to the sound discretion of the trial court. See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 101 F.R.D. 34, 40-41 (C.D.Cal. 1984); see also Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 474 (9th Cir. 1992) (request to modify a protective order reviewed for abuse of discretion).

The parties both agree that there must be good cause shown before a protective order can be vacated. Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D.Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated"). The party seeking to vacate or modify the protective order bears the burden to demonstrate good cause. Id. In this instance, the parties have identified multiple factors that courts consider in determining good cause. Some courts consider: (1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification. Murata, 234 F.R.D. at 179 (citing Bayer AG and Miles, Inc. v. Barr Laboratories, Inc., 162 F.R.D. 456, 460 (S.D.N.Y. 1995)). Other courts consider: (1) the extent of reliance on the order; (2) the public and private interests affected; (3) the moving party's consent to submit to the terms; (4) reasons for issuing the order and any new information; and (5) the burden created for others seeking information relevant to other litigation. Pansy v. Borough of Stroudsberg, 23 F.3d 772, 790 (3d Cir. 1994).

B.   Analysis

1.   Sexually Hostile Work Environment

As the first basis for modification, Plaintiff focuses on the Court's discussion of a sexually hostile work environment. In the October 13, 2009, order, the Court stated:

> "In most instances, workplace affairs in and of themselves have not been found to create a sexually harassing environment." Perron v. Sec'y, Dep't of Health and Human Servs., 2007 WL 4219171, *4 (E.D.Cal. Nov. 29, 2007). An exception to this rule exists if the workplace affair entails "widespread" sexual conduct to which other employees are exposed, such as flagrant boasting about the relationship and/or public displays of affection. Miller v. Dep't of Corrs., 36 Cal.4th 446, 471, 30 Cal.Rptr.3d 797, 115 P.3d 77 (2005).

Plaintiff contends that he has obtained further evidence to demonstrate a widespread sexually hostile work environment. Plaintiff identifies his own declaration, as well as the

declaration of three current or prior MID employees: Belinda Almeida, Rodrigo Flores and Salvador Alejandro Castro. Plaintiff argues that the declarations demonstrate that Mike Higgins and Veronica Cavazos were not involved in a clandestine relationship, but subjected other MID employees to unwelcome verbal and physical conduct of a sexual nature that clearly altered the conditions of everyone's employment. The relationship also was overt and widespread enough to draw the attention and alter the working environment of numerous employees.

Plaintiff has not asserted a sexually hostile work environment claim in his complaint. See Complaint generally. Instead, Plaintiff has asserted claims for sex and race discrimination. Within those claims, Plaintiff alleged that he was "[s]ubjected ... to instances of hostile work environment." Complaint, ¶¶ 61, 68, 106. As the Court stated in its October 13, 2009, order, to support a hostile work environment claim based on a work-place romantic relationship, Plaintiff must show that: "1) [he] was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (citation omitted). However, the "further evidence" submitted by Plaintiff does not suggest that the alleged affair between Higgins and Cavazos was sufficiently severe or pervasive to alter the conditions of Plaintiff's own employment. There is nothing in the Flores, Almeida or Castro declarations showing that any alleged affair between Higgins and Cavazos resulted in detriment to Plaintiff or altered the conditions of his employment.

      2.      Gender Discrimination Under Paramour Theory

Next, Plaintiff focuses on the Court's discussion of the paramour theory. In relevant part, the Court's order stated:

> Under the "paramour" theory of discrimination, a supervisor's relationship with a co-worker coupled with favoritism is used to support a discrimination claim. See Perron, 2007 WL 4219171 at *5). In Perron, the court noted that aside from one decision, "every other federal court which has considered the propriety of the 'paramour' theory has rejected it as a Title VII cause of action." Id. Courts have reasoned that when an employer discriminates in favor of a paramour, such favoritism disadvantages both sexes for reasons other than gender. Id. "The analysis changes, however, where favoritism directed from a supervisor to his paramour is transformed from simple favoritism to the concrete bestowal of employment benefits denied other employees." Id.

4

1  The order also found that Plaintiff had not linked the alleged Higgins-Cavazos relationship with
2  any denial of benefits to Plaintiff.
3      Plaintiff now claims that he has obtained further evidence that paramours received benefits
4  not given to other employees.  In part, Plaintiff points to the Declaration of Belinda Almeida, who
5  felt disadvantaged by the relationship between Higgins and Cavazos.  Plaintiff's submission of this
6  additional evidence undercuts his claim under a "paramour theory."  As the Court previously
7  explained, courts have rejected the paramour theory because the alleged favoritism works equally
8  against both sexes.  Further, Plaintiff has yet to submit factual allegations linking an alleged
9  Higgins-Cavazos relationship with any denial of his employment benefits.
10      Plaintiff attempts to link Higgins' alleged favoritism toward his paramour to a denial of
11  employment benefits by claiming that his promotion to Customer Service Supervisor was really an
12  effort by Higgins to send Plaintiff into a situation where he knew Plaintiff would be undermined
13  by the females that were receiving privileges from management in exchange for their flirtations
14  and sexual attentions.  Joint Statement, p. 31; Declaration of LaMonte Tumbling ¶¶ 15-19.
15  However, Plaintiff's conclusory assertions in his declaration are insufficient.  Moreover, MID
16  provided the deposition testimony of Bob Blum, who reported that the decision to promote
17  Plaintiff in 2005 was made at a meeting of MID's executive management staff.  Higgins was not a
18  part of the decision process and was not at the executive management level.  Deposition of Robert
19  Blum, 191:17-22, Declaration of Matthew Racine ¶ 5.  Garith Krause, then MID General
20  Manager, also testified that Higgins was not involved in the decision to promote Plaintiff.
21  Deposition of Garith Krause, p. 4:12-13; Racine Declaration ¶ 6.
22      The Court does not find good cause to modify its previous order.  As discussed, Plaintiff's
23  new evidence does not support modification.
24  **II.     REQUEST FOR SANCTIONS**
25      MID requests sanctions in connection with the motion to modify.  MID contends that
26  motions for protective orders, including modifications, are governed by Fed. R. Civ. P. 26(c)(3),
27  which provides that an award of expenses related to such motions is governed by Fed. R. Civ. P.
28  37(a)(5).  Rule 37(a)(5)(B) states:

5

> If the motion is denied…the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B). MID argues that Plaintiff cannot establish that his position is substantially justified because he filed this motion more than one month after the previous order and has presented no evidence that could support good cause to modify the terms of the protective order. The Court declines to award expenses. Plaintiff did not simply renew his previous motion, but attempted to submit additional evidence to justify modification of the Court's order.

## **CONCLUSION**

Based on the above, Plaintiff's motion to modify the October 13, 2009, order is DENIED. Defendant's request for sanctions also is DENIED.

IT IS SO ORDERED.

Dated:   **January 8, 2010**         /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE

6