1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                        EASTERN DISTRICT OF CALIFORNIA

8

9   LaMONTE TUMBLING,                          CASE NO. CV F 08-1801 LJO DLB

10                                             **ORDER ON MOTION FOR SUMMARY**
                        Plaintiff,             **JUDGMENT**
11          vs.

12
    MERCED IRRIGATION DISTRICT,
13

14                      Defendant.
    _____/
15

16          By notice filed on June 22, 2010, Defendant Merced Irrigation District ("MID") seeks summary

17   judgment or in the alternative summary adjudication pursuant to Fed.R.Civ.P. 56 on plaintiff's

18   complaint.   Plaintiff LaMonte Tumbling filed an opposition to the motion on August 31, 2010.

19   Defendant filed a reply on September 3, 2010.  Thereafter, the Court requested supplemental briefing

20   on a discovery/evidentiary issue presented in the reply papers.  The parties submitted their supplemental

21   briefs on September 21 and September 22, 2010.   Pursuant to Local Rule 230(g), this matter was

22   submitted on the pleadings without oral argument and the hearing was vacated.  Having considered the

23   moving, the opposition and the reply papers, as well as the Court's file, the Court issues the following

24   order.[1]

25   _____

26          [1] The parties have filed numerous objections to the evidence submitted by the opposing side. The court has not relied
     on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as
27   to the claims, the Court found triable issues exist regarding the employment decisions. The Court has granted summary
     judgment as to the statute of limitations because plaintiff failed to meet his burden under either claim, as explained in the body
28   of the order. To the extent that the court may have considered some of the disputed evidence in finding that triable issues

                                                  1

**FACTUAL BACKGROUND**

Plaintiff LaMonte Tumbling has been employed by Defendant Merced Irrigation District ("MID") since 1994.  For the entirety of the relevant period, plaintiff was the only African-American in the MID offices.  On January 31, 2005, a new Customer Services Group was formed merging the customer service functions for the water irrigation and electrical aspects of MID.  Plaintiff was promoted to the position of Supervisor of Customer Services Group.  Defendant presents evidence that plaintiff had some difficulties in this supervisory position.  Nonetheless, in December 20, 2005, plaintiff was awarded Supervisor of the Year.

Shortly thereafter, in approximately May 2006, plaintiff was demoted to the position of Supervisor of Water Operations in the Customer Service Group.  (Doc. 1 Complaint ¶32.)  In this position, plaintiff was no longer supervisor of the entirety of Customer Services Group, and was responsible solely for Water Operations.  Defendant presents evidence plaintiff was demoted because he was having difficulty learning the electrical aspects of the Customer Services Group.   Plaintiff presents evidence that he was adequately performing because prior to his demotion, he had never received a written reprimand, negative review or any documentation that plaintiff's performance needed improvement.  Plaintiff presents evidence that, historically, MID has engaged in progressive discipline, yet plaintiff was not so disciplined or instructed on areas of improvement.

When plaintiff was demoted, MID promoted a Caucasian woman, who had previously reported to plaintiff, to the position over plaintiff.  She was promoted to Lead Customer Services Department Manager.  (Doc. 110, Opposition p. 7.)  Plaintiff alleges the woman was less qualified and paid more than he was paid. Plaintiff complained to managed about the history of favoritism toward female workers, and that plaintiff was experiencing gender and racial discrimination when he was demoted.

After he complained, plaintiff contends he further was demoted. Plaintiff was demoted from his position of Supervisor of Water Operations to that of Chemical Spray Technician on June 27, 2007.

---

exist regarding the claims, the objections are OVERRULED.  Further, the court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

1    Plaintiff contends that the work of a Chemical Spray Technician is a field-hand work.

2         Plaintiff alleges the following claims against defendant MID:

3              1)    Race & Gender Discrimination (Title VII);

4              2)    Race & Gender Discrimination (FEHA);

5              3)    Retaliation for Protected Activity (Title VII);

6              4)    Retaliation for Engaging in Protected Activity (FEHA);

7              5)    Failure to Prevent Discrimination and Harassment (FEHA);

8              6)    Whistleblower (Labor Code §1102.5); and

9              7)    Civil Rights Act of 1866 (42 U.S. §1981, et seq.)

10   The Complaint alleges numerous adverse employment actions against plaintiff due to his sex, gender,

11   race and color, which are each incorporated into each claim for relief.  The major challenges to MID's

12   conduct appear to be for the demotion to the Supervisor of Water Operations in May 2006 and the

13   second demotion to Chemical Spray Technician on June 27, 2007 and conduct related to such

14   demotions.  The complaint alleges the following actions as discriminatory:

15        (a)    Deprived him of equal pay and benefits including pay already earned and due;

16        (b)    Deprived him of pay increases;

17        (c)    Subjected him to demotion without cause, due to gender and race considerations;

18        (d)    Subjected him to different rules;

19        (e)    Demoted him;

20        (f)    Took away his supervisory responsibilities;

21        (g)    Transferred him to a less desirable position with harsher and less prestigious work

22              conditions;

23        (h)    Disciplined him without just cause;

24        (I)    Deprived him and other MID employees of equal treatment for all of the terms and

25              conditions of employment for the employees of the MID;

26        (j)    Passed him over for promotion, pay and step increases and in fact subjected to reduction

27              in position and pay without justification or basis;

28        (k)    Undercut and demeaned him as a manager and supervisor making it more difficult to

3

1     secure results by holding his employees accountable.

2     (l)     Assigned him duties and responsibilities and without paying him at the same level and

3             rate as others similarly situated;

4     (m)     Subjected him to instances of hostile work environment without any significant effort to

5             prevent or remediate such hostility; and

6     (n)     Subjected to a double standard for retention of employment, demotion, and discipline

7             which lead to his demotion;

8     (o)     Retaliated against him for engaging in activities protected by FEHA, Title VII, and other

9             constitutional and statutory protections.  (Doc. 1, Complaint ¶¶61, 68, 106.)

10                              **ANALYSIS AND DISCUSSION**

11    **A.     Summary Judgment/Adjudication Standards**

12            F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

13    all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine

14    issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

15    F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

16    1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

17    The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order

18    to see whether there is a genuine need for trial."  *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct.

19    1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On

20    summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material

21    fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v.

22    Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

23    U.S. 144, 157, 90 S.Ct. 1598 (1970).

24            To carry its burden of production on summary judgment/adjudication, a moving party "must

25    either produce evidence negating an essential element of the nonmoving party's claim or defense or

26    show that the nonmoving party does not have enough evidence of an essential element to carry its

27    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

28    F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the moving

party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

**B.      DFEH/EEOC Charge is Time-barred**

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 10, 2008. In the Charge, plaintiff alleged he was discriminated against based upon his gender, race-color, national origin/ ancestry and was retaliated against for complaining about discrimination. (Doc. 100, Exh. 44-46 (EEOC Charge).)

Defendant MID argues that Plaintiff's claims under Title VII and the Fair Employment and Housing Act ("FEHA") are time barred. MID argues that the claims under Title VII are only actionable for the 180-day period prior to his filing the EEOC complaint on June 10, 2008. Defendant argues that any challenged employment acts occurring before December 31, 2007 therefore is untimely. For plaintiff's FEHA claims, MID argues that the FEHA one year limitations period bars any challenged employment act which is alleged to have occurred before June 10, 2007. (Doc. 97, Moving papers p.13.)

Plaintiff argues that a 300-day limitations period, not the 180-day period, applies for his Title VII claims. He argues the EEOC and California Department of Fair Employment and Housing

("DFEH") have a work share agreement in which the EEOC charge is "constructively filed" with both agencies. (Doc 103, Opposition p. 15.)  Plaintiff argues, in that situation, where a plaintiff files a claim with the EEOC, it is cross-filed and constructively received by the DFEH, and Title VII's 300-day extension applies to all claims.  Plaintiff argues, therefore, he filed his complaint with the EEOC on June 10, 2008 and he is statutorily entitled to recover on acts within the 300 days preceding the June 10, 2008 file date, which is August 16, 2007, and not December 13, 2007.

### 1.     180-Day or 300-Day Limitation Period under Title VII

Title VII establishes two potential time limitations periods within which a plaintiff must file an administrative charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081-1082 (9th Cir. 2006).  Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination.  *Id.* However, the limitations period is extended to 300 days if a plaintiff "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1).  Thus, if the plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice," the limitations period is extended to 300 days.  *Id.*

Under Title VII, state agencies are authorized to investigate and enforce Title VII claims pursuant to "work sharing agreements" with the EEOC.  42 U.S.C. §2000e-8(b); 29 C.F.R. §1626.10( c).  The California DFEH and the EEOC have such a work share agreement.  *See E.E.O.C. v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) (Constructive filing is made possible by "worksharing agreements," which designate the EEOC and the state agency each other's agents for the purpose of receiving charges).  Charges filed with either the EEOC or the DFEH are deemed "constructively filed" with the other.  29 CFR §1626.10( c); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175-76 (9th Cir. 1999).  These workshare agreements are intended to eliminate duplication of effort between the agencies and to provide an efficient procedure for claimants to seek redress for their grievances.  *See Laquaglia,* 186 F.3d at 1177.

Defendant argues that the extended 300-days does not apply because plaintiff failed to "initially file" with the DFEH.  Defendant argues that since plaintiff "initially filed" with the EEOC, and not with the DFEH, the 180-day limitations period applies.

Indeed, plaintiff, in this instant case, first filed with the EEOC on June 10, 2008. The EEOC Charge was then forwarded to the DFEH for processing and received on June 24, 2008. (See Doc. 100, Exh. 46 (DFEH complaint)). The statutory language would seem to mandate that the 180-day limitations apply because plaintiff "first filed" with the EEOC, and not with the DFEH. Pursuant to Title VII, the limitations period is extended to 300-days if plaintiff first files with the DFEH. 42 U.S.C. § 2000e-5(e)(1).

Here, however, no party has cited controlling case authority which has resolved the limitations period where the plaintiff "initially files" with the EEOC, in light of the workshare agreement. MID relies merely upon the statutory language. Yet, the statute does not address where the State and the EEOC have a workshare agreement. The authorities cited by the parties involve whether a plaintiff first filed a DFEH complaint and whether the claims thus would be timely under Title VII. For instance, in *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172 (9th Cir.1999), the employee initially filed with the state agency, after the statute had run on the state claims. The Court held that the 300-day time limit for filing the federal claims applied even when the employee missed the state's filing deadline. Indeed, the court held that barring the federal claim, based on state procedural hurdles, would be "entirely at odds with the purpose of the worksharing agreement and with Title VII." *Id.* at 1177. *See Surrell v. California Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008) (plaintiff initially instituted proceedings within the DFEH); *See Downs v. Dept. of Water and Power*, 58 Cal.App.4th 1093, 1097, 68 Cal.Rptr.2d 590 (1998) ("The EEOC and the DFEH each designated the other as its agent for receiving charges and agreed to forward to the other agency copies of all charges potentially covered by the other agency's statute").

Interpreting Title VII with the longer, 300-days limitation period, in a State with a work-share agreement, fosters the remedial scheme of Title VII and the liberal construction of the statute. In enacting Title VII, Congress intended the statute's procedural requirements to be liberally construed in order to remedy discrimination in the workplace and to preserve a claimant's federal remedies in discrimination suits. *See, e.g., E.E.O.C. v. Commercial Office Prods.*, 486 U.S. 107, 124, 108 S.Ct. 1666 (1988) ("Title VII ... is a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process."); *accord Laquaglia*, 186 F.3d at 1177 (Prohibiting any remedy to claimants who

7

1    file discrimination complaints with an appropriate state or federal agency within the 300-day deadline

2    is entirely at odds with the purpose of the worksharing agreement and with Title VII).

3          For plaintiff's Title VII claims, the Court finds that the applicable limitations period is 300 days

4    before the filing of the EEOC claims, not 180 days as argued by MID.   Based on plaintiff's filing with

5    the EEOC, and the state work share agreement, the 300 days limitations period applies.   Therefore, acts

6    preceding 300 days before the June 10, 2008 file date are barred under Title VII.

7                    **2.      Statute of Limitations on the FEHA claims**

8          California Government Code §12960(d) provides a general one year limitations period to file a

9    complaint with the California DFEH.  Cal. Gov. Code §12960(d) ("No complaint may be filed after the

10   expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate

11   occurred . . ."); *Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 493, 59 Cal.Rptr.2d 20, 28 (1996)

12   (the limitations period applicable to administrative claims begins to run "after" the unlawful employment

13   practice has "occurred.") Thus, an administrative complaint must be filed with the DFEH within one

14   year of the date the alleged unlawful practice occurred.

15         Here, plaintiff's June 10, 2008 EEOC charge forms the administrative charge for his FEHA

16   claims.  The DFEH was constructively filed on June 10, 2008 and the one year limitations bars any

17   claims preceding June 10, 200_7_.  Plaintiff's claim for title change in May 2006 to Supervisor of Water

18   Service is time barred.  Conduct occurring more than one year before the June 10, 2008 file date cannot

19   serve as a basis for liability under the FEHA.

20                  **3.      Equitable Estoppel Exception to the Statute of Limitations Does Not Apply**

21         Plaintiff argues that MID should be equitably estopped from asserting the statute of limitations.

22   Plaintiff argues that MID should be estopped because individual MID Board members made affirmative

23   and misleading statements preventing plaintiff from timely filing his claims after his demotion.  Plaintiff

24   argues that following his demotion to Chemical Spray Technician on June 27, 2007, he was contacted

25   by four Board members who told him "don't do anything" and they would reinstate him by April 2008.

26   The MID Board members promised to get plaintiff's Supervisor's position back.  Plaintiff argues he was

27   lulled into inaction by reliance on the four MID Board of Directors' representations.

28         Defendant argues that equitable estoppel should not apply to toll the statute of limitations.

1    Defendants argue that the individual board members have no authority to bind MID and plaintiff

2    unreasonably "relied" upon Board Members who had no authority to bind MID.

3                        (A)      Demotion to Supervisor of Water Operations

4            Plaintiff's demotion to Supervisor of Water Operations is barred by the statute of limitations,

5    regardless of his equitable estoppel argument.  Plaintiff does not present evidence that any Board

6    member contacted him regarding his demotion to Supervisor of Water Operations in April-May 2006.

7    There is no evidence that the MID Board members urged him to refrain from action regarding his

8    demotion from Supervisor of Customer Service to Supervisor of Water Operations (Doc. 110, Plaintiff's

9    Statement of Facts #189-200.)  Rather, plaintiff's evidence pertains to statements made by the MID

10   Board members immediately following his demotion to Chemical Spray Technician in June 2007.

11   Plaintiff argues that he was urged by Board Members to "not do anything" as to his demotion to

12   Chemical Spray Technician.   Therefore, since there is no evidence the MID Board made any

13   representations to "don't do anything" for the demotion to Supervisor of Water Operations in May 2006,

14   MID is not equitably estopped from claiming the statute of limitations has run on the claim for demotion

15   to Supervisor of Water Operations.

16                        (B)      Demotion to Chemical Spray Technician

17           Defendant challenges the reasonableness of plaintiff's reliance upon the statements of the MID

18   Board Members.  Defendant argues that these MID Board members did not have the authority to bind

19   the MID with their assurance to plaintiff because the MID Board, not individual members, act on behalf

20   of the MID through majority vote.  (Doc. 97, Moving papers p. 11-12.)

21           Plaintiff argues that the statute of limitations was "equitably tolled."  Plaintiff's argument,

22   however, is actually on based upon equitable "estoppel" because plaintiff focuses upon the wrongdoing

23   of MID.[2]  (Doc. 103, Opposition p. 16.)  Plaintiff argues the law does not shield MID from affirmative

24   misrepresentations and MID should be estopped to argue the running of the statute of limitations.

25   _____

26        [2] Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit,
     whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to
27   the defendant. *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  In his complaint, plaintiff alleges a "tolling"
     of the statute of limitations because a supervisor "threatened" him in 2006.  Plaintiff does not present argument or evidence
28   on this issue of "tolling."  (See Doc. 110, Plaintiff's Opposition p. 17-18.)

(1)      Equitable Estoppel

"Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit...." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). "A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied." *Id.*[3]  "[C]onduct or representations by the defendant-employer which tend to lull the plaintiff into a false sense of security, can estop the defendant from raising the statute of limitations, on the general equitable principle that no man may take advantage of his own wrong." *Atkins v. Union Pac. R.R.*, 685 F.2d 1146, 1149 (9th Cir.1982) (internal quotation marks and alterations omitted).

The conduct plaintiff argues as the basis for equitable estoppel is as follows: Within two weeks of his demotion to Chemical Spray Operator, MID Board Members Billy Pimentel, Stan Morimoto, Gino Pedretti and Tim Pellisier contacted plaintiff.  Board Members Billy Pimentel and Stan Morimoto called plaintiff at his home and told him "not to worry" and they would reinstate him to his previous Supervisor position by the end of April 2008.  Both Billy Pimentel and Stan Morimoto assured plaintiff that MID would reinstate him and that he did not need "to take any action" or do anything to get his job back.  Several nights later, MID Board Member Gino Pedretti called plaintiff at home and told plaintiff he would be reinstated to his prior position by the end of April 2008, and that plaintiff did not need to take any action to make this happen.  Gino Pedretti told plaintiff that it looked like plaintiff had been "set up."  A few nights after this call, MID Board Member Tim Pellissier called Plaintiff and told him plaintiff would be reinstated to his prior position, but not until April 2008.  Mr. Pellissier told plaintiff not to take any action because the Board would fix the problem.  He was told that he would get his job back "once Garith [MID general manager] was gone and he was no longer the general manager once he

---

[3] Under California law, similar factors are considered to determine equitable estoppel.  Whether a discrimination plaintiff who (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time." *Rodriguez v. Airborne Express,* 265 F.3d 890, 901 (9th Cir. 2001) (applying Calif. law).

10

1   retired in April of 2008." (Doc. 111, Tumbling Depo. V2, Exh. 42, 380-381.)  Plaintiff was told to

2   "hang in there."  (Doc. 111, Tumbling Depo. V2, Exh. 42 p. 382-384, 386.)

3                                  (2)      Plaintiff's Reliance

4          In order to assert equitable estoppel, the plaintiff must demonstrate both actual and reasonable

5   reliance on the defendant's conduct or representations.  *Santa Maria*, 202 F.3d at 1176.

6          Plaintiff's reliance upon the statements of the MID Board members was unreasonable.  The

7   individual MID Board members made the statement in June-July 2007 - with no further representations.

8    Accepting that plaintiff relied upon these statements, means that it would be reasonable for plaintiff to

9   rely, for nine months from July 2007 to April 2008 with no further contact, and do nothing.  To sit on

10  legal rights for nine months on representations of "hang in there," "keep your head up" is unreasonable.

11         Regardless of whether plaintiff's alleged reliance was "reasonable," plaintiff did not actually rely

12  upon the MID Board representations.  After plaintiff was demoted to Chemical Spray Technician in June

13  2007, plaintiff appeared before the MID Board of Directors on November 6, 2007 to complain about

14  discriminatory treatment.  Plaintiff appeared before the Board and complained to the Board that plaintiff

15  was being discriminated against based upon race and gender, including his demotion.  (Doc. 97, Joint

16  Statement of fact 70-71; Tumbling Depo p. 433-434.)[4]  Lodging a formal-type complaint patently is

17  inconsistent with plaintiff's argument that he was "lulled" into believing the statements of defendant

18  representatives, months earlier, not to file suit and to "hang in there."  Certainly, plaintiff was not lead

19  to sit on his rights due to the representations of the individual Board members in June 2007 because

20  plaintiff made a complaint before the full MID Board in November 2007.  Thus, plaintiff did not

21  "actually" rely upon the representations of the MID individual board members in June 2007, such as to

22  estop defendants from asserting the statute of limitations.  The Ninth Circuit has held that "[i]f the

23  factual context makes the non-moving party's claim implausible, then that party must come forward with

24

---

25         [4] Plaintiff objects to the evidence that the formal complaint which was presented to the MID Board in closed session
    on November 6, 2007.  (See Doc 107, Plaintiff's objections p. 2.)  The objection, however, does not go to whether plaintiff

26  in fact complained to the Board or whether the Board heard the complaint.  Plaintiff's objection goes to defendant's
    characterization that this was plaintiff's *first* complaint of discrimination. Plaintiff's objection states in part, "Plaintiff lodged

27  numerous complaints about the racial and gender discrimination he experienced at MID with his mangers Jem Brown, Robert
    Blum, and Garith Krause prior to the November 6, 2007."  Accordingly, there is no disputed fact that plaintiff made a

28  complaint to the MID Board regarding discrimination.

more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir.1998) (summary judgment granted on implausible factual dispute). Here, plaintiff has not presented more persuasive evidence showing his reliance.

Further, it was "unreasonable" for Plaintiff to continue to rely upon the individual Board members June 2007 statements, when five months later, plaintiff formally appeared before the MID Board to complain about discriminatory treatment on the basis of race and gender. Plaintiff knew no later than November 2007 not to "rely" upon the individual MID Board members 2007 statements. Given this factual context, there is no genuine issue of material fact that plaintiff actually and reasonably relied upon the MID Board representations.

(3)     No Evidence of MID's Improper Purpose

Further, there is no evidence of any improper purpose in the statements made by the MID Board members. In *O'Donnell v. Vencor, Inc.*, 465 F.3d 1104 (9th Cir. 2006), the court denied equitable estoppel to the running of the statute of limitations on an employees's filing of a Title VII action based on the employee's reliance on the employer's filing for bankruptcy where there was no evidence "of improper purpose on employer's part, or of employer's actual or constructive knowledge of deceptive nature of its conduct." *See also Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (noting that "improper purpose on the part of the defendant" is a significant factor in determining applicability of equitable estoppel).

Plaintiff has not produced evidence from which a reasonable jury could conclude that the MID Board members had an improper purpose in telling plaintiff to "don't do anything." Plaintiff's evidence is that these Board members were trying to help him get his job back, and that he would probably get his job back when Garith Krause, the general manager, retired in April 2008. (Doc. 111, Tumbling Dep p. 383.) The evidence is not remotely suggestive that the MID Board members were attempting to trick plaintiff into not filing a complaint. For instance, plaintiff testified:

> Q.     . . . The conversation you had with Stan Morimoto, he called your home, he told you to hang in there, and that he felt that this was Garith's doing, and once Garith leaves, the you'll get your job back?
>
> [Tumbling]:   That is correct.  (Doc. 111, Tumbling Depo. p. 383.)

Plaintiff testified that he later received a call from Mr. Pedretti:

> Q.    And what did Mr. Pedretti say?
> A.    Basically the same thing, that the best they could do for me is possibly get me back in April when Garith was gone, and that it looks like they basically sabotaged me. . . .  (Doc. 11, Tumbling Depo. 385.)

Plaintiff testified that he received similar type phone calls from 1-2 other Board members.  The Plaintiff's deposition testimony is not suggestive of any wrongful conduct on the Board members' part in attempting to delay his filing of an EEOC claim or to trick him in any way.  Accordingly, plaintiff has failed to raise an issue of material fact that equitable estoppel should bar the running of the statute of limitations.  Therefore, the statute of limitation ran 300 days prior to the filing of the EEOC Charge for the Title VII claims and one year before the Charge for the FEHA claims.

**C.    Racial/Gender Discrimination in Promotion/Demotion under Title VII and FEHA**

Plaintiff has included a litany of alleged wrongful acts committed by MID during the course of his employment.  Defendants focus their challenge on the demotion to Supervisor of Water Customer Service and the demotion to Chemical Spray Technician.  (Doc. 97, Moving papers p.13.) To the extent that any such acts occurred within the statute of limitations, the Court turns to these allegations.

**1.    Burden of Proof on *Prima Facie* Case**

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race . . ." 42 U.S.C. §2000e et seq.  A plaintiff may show violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.  *Sischo-Nownejah v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).  Here, plaintiff alleges he was intentionally discriminated on the basis of disparate treatment.

A plaintiff may establish a prima facie case of discrimination by introducing evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109. The evidence may be either direct or circumstantial, and the amount that must be produced to create a prima facie case is

"very little." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Sischo-Nownejah*, 934 F.2d at 1110-1111. A plaintiffs' Title VII claim is analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination. *Hawn v. Executive Jet Management, Inc.,* - F.3d. -*,* 2010 WL 3218520, 3 (9th Cir. 2010). If plaintiff establishes a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination. *Id.* The employer's proof of legitimate, nondiscriminatory reasons for its action dispels the inference of discrimination raised by plaintiff's *prima facie* case. The *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000).

A plaintiff can make out a prima facie case for failure to promote under Title VII by showing: (1) he is a member of a protected class, (2) he was qualified for the position and performing their jobs satisfactorily, (3) he suffered an adverse employment action, (4) the action occurred in circumstances suggesting discriminatory motive. *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. at 1824 (to establish a prima facie case of discrimination, a plaintiff must show, inter alia, that he applied and was qualified for a job).

(A)     Suffered an Adverse Employment Action

Defendant argues that plaintiff cannot meet his burden of proof on his *prima facie* case. Defendant argues plaintiff cannot show he suffered an adverse employment action. MID argues that the transfer to Chemical Spray Technician was not "an adverse employment action' because plaintiff continued to work for MID and never had reduced pay or benefits.

Plaintiff argues he was demoted and while not losing pay, he is now performing manual labor in the field, and not in an office setting. Plaintiff argues his title changed from that of "supervisor" to "technician" where he is no longer manages and supervises other employees.

An adverse employment action is defined broadly. *Fonseca v. Sysco Food Services of Arizona,*

14

1   *Inc.*, 374 F.3d 840 (9th Cir. 2004); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("Transfers

2   of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment

3   decisions....'"); *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir.1981) (a transfer

4   to another job of the same pay and status may constitute an adverse employment action.)

5          Here, plaintiff suffered a tangible change in working conditions that produced a material

6   employment disadvantage.  He is no longer a supervisor with oversight responsibilities and intellectual

7   challenges of that position.  While there is no direct evidence on this point, presumably his career

8   advancement opportunities have also been adversely affected.  Thus, plaintiff raises an issue of fact as

9   to whether he has suffered an adverse employment decision.

10                 (B)     Conditions Suggesting Discriminatory Motive

11         Defendants also argue that plaintiff cannot establish a "discriminatory motive" of the *prima facie*

12   case.  MID argues plaintiff was not "replaced" because no one replaced him.  One person, Linda LaCava,

13   was promoted to a newly created position above plaintiff's position and the other person, Davidson,

14   received a promotion similar to plaintiff.  Both received their promotions in May 2006.

15         Here, plaintiff has raised issues of fact as to whether there was a discriminatory motive. Plaintiff

16   was the first and only African-American Supervisor.  Once plaintiff was in his supervisor positions, he

17   was not supported by his then-supervisor.   He presents evidence he was not provided training,

18   undermined by subordinates at the direction of his then-supervisor, and given onerous assignments for

19   which he was not given time to complete.   Arguably, plaintiff, once promoted, was set up to fail.

20   Further, plaintiff has presented evidence that there was some racially charged words used by supervisors

21   at MID including some specifically referring to plaintiff.  Plaintiff presents evidence that plaintiff has

22   been referred to as a "typical black man," "boy" and possibly "nigger."  (Doc. 110, Disputed fact #165-

23   186.)

24         In addition, plaintiff presents evidence that females were treated more favorably than males.  He

25   raises an issue of fact as to whether Ms. LaCava was promoted without applying, and only females

26   where considered for promotions. Plaintiff has presented evidence suggesting that an adverse

27   employment action resulted from discriminatory motives.

28   /////

15

1

2. **Articulated Legitimate Nondiscriminatory Reason**

2      Since plaintiff can establish a *prima facie* case, defendant argues the next step in the *McDonnell*

3 *Douglas* burden shifting analysis:  Defendant argues that it articulates a legitimate non-discriminatory

4 reasons for his demotion.  Plaintiff was reassigned to Water Customer Supervisor because Plaintiff could

5 not learn the electrical side of customer service.  Also, his later transfer to Chemical Spray Technician

6 was non-racial because he asked to be transferred to the field.  (Doc. 97, Moving papers p. 16.)

7 Defendant argues that plaintiff's negative attitude and requests to be transferred is a legitimate

8 nondiscriminatory reason to transfer him.  Defendant argues plaintiff has no evidence of pretext because

9 he was hired, promoted, given raises, praised, over the years as an African-American man.  (Doc.97,

10 Moving papers p. 17.)

11      MID has articulated a non-discriminatory reason for treating plaintiff's demotion.  MID states

12 he was demoted because plaintiff was not performing the position as management expected him to

13 perform the job and because plaintiff requested to be transferred.  Accordingly, MID has met its burden

14 of articulating a nondiscriminatory reason.

15

3. **Plaintiffs' Argument of Pretext**

16      Because defendant rebutted the presumption of discrimination, the burden shifts back to plaintiff

17 to establish that MID's stated reasons for the adverse employment action was pretext for unlawful

18 discrimination. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Plaintiff may

19 establish "pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is

20 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly,

21 by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of*

22 *California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin v. Hung Wesson,*

23 *Inc.*, 150 F.3d 1217,1220-21 (9th Cir. 1998)).  Plaintiff must provide "specific, substantial evidence"

24 that the reasons given were a pretext for discrimination. *Bradley*, 104 F.3d at 270.  In addition, Plaintiff

25 must establish that there was a causal connection between his protected status and the adverse

26 employment action.  *Mixon v. Fair Employment and Housing Com.*, 192 Cal. App. 3d 1306, 1317

27 (1987).

28      To oppose this motion, plaintiff must show that the "claimed factual dispute be shown to require

a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona*, 391 U.S. at 290. "A disparate treatment plaintiff can survive summary judgment without producing any evidence beyond that constituting his prima facie case, if that evidence raises a general issue of material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)). If Plaintiff demonstrates through specific evidence that a genuine issue of material fact exists, defendants' summary judgment motion must be denied. In a Fed. R. Civ. P. 56 motion, however, this Court does not resolve factual issues. *Chuang*, 225 F.3d at 1124 (ultimate question of employment discrimination is conducted most appropriately by a factfinder, not on summary judgment).

Here, the Court finds that plaintiff produced direct evidence as to his discrimination claims. There is direct evidence of possible racial animus. For instance, racially derogatory terms were used by supervisors and used to refer to plaintiff in particular. The term "nigger" has been used. Plaintiff has been referred to as a "a typical black man" by plaintiff's supervisor, Jem Brown, who had a hand in demoting plaintiff. (Doc. 111-2, Franco depo. p.31.) Plaintiff has also been referred to as "boy" and that he should have "stayed in his place." *Chuang*, 225 F.3d at 1128 (egregious and bigoted insult is direct evidence of discriminatory animus). Thus, plaintiff has offered direct evidence of a possible "culture" of racial animus. "With direct evidence, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Chuang*, 225 F.3d 1115, 1128 (9th Cir. 2000).

Further, plaintiff has presented indirect evidence that MID's proffered reasons for demoting plaintiff are not worthy of credence. Plaintiff presents evidence that he was performing his position as Supervisor of Customer Service and then Supervisor of Water Services adequately. Plaintiff was never given a disciplinary action, negative review or any written indication that his performance as a supervisor was lacking in any way. Plaintiff presents evidence that MID has a policy of progressive discipline and had his performance been substandard, he should have been so informed through the progressive discipline policy. Since there was no communication to plaintiff that his performance was substandard and defendant claims plaintiff was transferred based upon his substandard performance, there is evidence to enable a reasonable trier of fact to conclude that he was transferred for some other

1   reason.  Given the evidence of possible racial animus, and lack of documentary discipline, the jury could

2   reasonably conclude that his transfer was based upon discriminatory reasons.

3        MID argues that there is no racial animus or culture.  MID argues that plaintiff has always been

4   an African-American man, has been promoted as an African-American  man, was demoted as an

5   African-American and remains employed at MID as an African-American man.  (Doc. 112, Reply p.5.)

6   MID argues that consistent treatment of plaintiff, as an African-American, demonstrates no racial animus

7   towards plaintiff.

8        MID's argument, however, is a factual dispute based upon reasonable inferences a jury could

9   make after considering the evidence.

10       MID further argues that the "same actor" inference is applicable to this case.  (Doc. 112, Reply

11  p. 7.)  MID argues that Garith Krause recommended plaintiff's promotion to Supervisor of Customer

12  Service on February 1, 2005.  (Doc. 97-2, Joint Facts, # 13, (Exh. 11)).  Garith Krause approved plaintiff

13  reassignment to Supervisor of Water Customer Service.  (Doc. Joint Facts, 38.)  And Garith Krause also

14  approved the reassignment to Chemical Spray Technician.  (Doc. 97-2, Joint Facts, #52.)  MID argues

15  "regardless of whether plaintiff believe Jem Brown or Robert Blum was involved in the decisions at

16  issue, Garith Krause was involved in all three of the decisions and the same actor inference applies."

17  (Doc. 12, Reply, p.7.)

18       Under Title VII, where the same person both hired and fired plaintiff, and both actions occur

19  within a short period of time, a "strong inference" arises that there was no discriminatory motive.

20  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  The "same actor" inference also

21  applies to cases in which plaintiff was not actually fired but merely demoted or offered less favorable

22  job assignments. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096–1097 (9th Cir. 2005).

23  The "same actor" inference, however,  may be weakened by other evidence and is "insufficient to

24  warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of

25  material fact." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 573–574 (6th Cir. 2003) (en banc).

26       Here, the evidence is unclear whether Garith Krause was the relevant decision maker for both

27  the promotions and the demotions.  MID presents evidence that Krause "approved" the employment

28  decision, but plaintiff presents evidence, which is supported by the Personnel Action Forms, that Robert

Blum and Jem Brown were involved.  Garith Krause was the General Manager for MID, and presumably he would have been "involved."  (Doc. 110, Tumbling decl. ¶16.)  But the evidence also shows that Jem Brown was plaintiff's immediate supervisor and the possible decision maker. (Doc. 110, Tumbling decl. ¶15, 37.)  As state above, there is an issue of fact as to whether Jem Brown was racially biased against plaintiff and from which a jury could conclude that he influenced the decision.  The same actor inference does not warrant summary judgment where, as here, plaintiff has established a prima facie case and produced direct evidence of pretext. *Compare Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir.1996)) (relying in part on the same-actor inference in granting summary judgment against plaintiff where she "did not produce any evidence showing [her employer's] proffered reasons were pretexts for an improper discriminatory motive");  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1287 (9th Cir.2000) (relying in part on the same-actor inference in granting summary judgment against plaintiff where she "ha[d] not cast doubt on the sincerity of [defendant's] explanation"), *cert. denied,* 533 U.S. 950 (2001).  Accordingly, plaintiff has rebutted the same actor inference and therefore, summary judgment is denied for the race discrimination claims.[5]

**D.      Section 1981 Claim Against MID**

The seventh claim for relief alleges race discrimination in violation of 42 U.S.C. §1981.  The Civil Rights Act of 1866 (42 U.S.C. § 1981) provides all persons of different races, ancestry or ethnic characteristics the same rights as white citizens to enforce contracts and to equal benefit of the law.[6]

Plaintiff alleges that he was treated less favorably in his terms and conditions of employment in various ways (15 actions are listed).  (Doc. 1, Complaint ¶106.)  Plaintiff challenges his demotions and treatment related to his demotion to Supervisor of Water Customer Service (Doc. 1, Complaint ¶38-40) and then his transfer and demotion and related treatment as a Chemical Spray Technician. (Doc. 1, Complaint ¶43-45.)

Defendant argues that plaintiff must show that "the conduct complained of [resulted] from an

---

[5] This finding of a factual dispute does not alter the Court's ruling that the 300-day statute of limitations bars claims which occurred prior to 300 days before the EEOC Charge was filed under Title VII and that the one year statute of limitations bars claims under the FEHA.

[6] A four year statute of limitations applies to claims for discrimination under 42 U.S.C. §1981.

1    official policy or custom in order to render the municipality liable."  Defendant argues there is no

2    evidence of a "written policy of race discrimination" and no evidence of a custom or practice of race

3    discrimination.  (Doc. 97, Moving papers p.21.)  Defendant argues that there is no evidence of a practice

4    or policy of race discrimination in employment at MID.

5            **1.     Plaintiff must Show Violation was Caused by a Custom or Policy**

6            As with claims under 42 U.S.C. § 1983, a municipality may be held liable for § 1981 claims only

7    if the plaintiff alleges and proves that his injury resulted from a municipal policy, practice, or custom.

8    *Federation of African Am. Contrs. v. City of Oakland,* 96 F.3d 1204, 1214-15 (1996) (1991 amendment

9    to § 1981 preserves "policy or custom" requirement in suits against state actors). Like claims under

10   §1983, no respondeat superior liability exists for § 1981 claims, and the rule articulated in *Monell v.*

11   *Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), applies to §1981

12   claims.  Municipalities are answerable only for their own decisions, and cannot be held vicariously liable

13   for the constitutional torts of their agents.[7] *See Federation of African Am. Contrs*, 96 F.3d at 1215.

14           A plaintiff may satisfy the principles of *Monell* liability by demonstrating that an "official

15   municipal policy" of some sort caused the constitutional tort in question. A plaintiff may demonstrate

16   a "policy" in one of three ways: (1) an employee acting pursuant to an expressly adopted official policy;

17   (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a

18   "final policymaker." *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir.), *cert. denied*, 528 U.S.

19   928 (1999); *see Delia v. City of Rialto*, - F.3d -, 2010 WL 3504502 (9th Cir. 2010) (no established a

20   practice, so permanent and well-settled so as to constitute a custom.)  Plaintiff must prove that there is

21   a policy, practice, or custom adopted by Defendants that led to his injuries.  *Anderson v. Warner*, 451

22   F.3d 1063, 1070 (9th Cir. 2006); *see also Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)

23   (holding that a local government entity cannot be held liable under § 1983 unless the plaintiff alleges

24   "that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized

25   _____

26          [7] "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983
     plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had
27   a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy
     is the 'moving force behind the constitutional violation.' " *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006), (quoting
28   *Monell*, 436 U.S. at 690).

1  [governmental] policy"), *cert. denied*, 479 U.S. 1054 (1987).

2               (A)      Express Official Policy

3        Plaintiff does not present evidence that the conduct at issue here was the result of an express or

4  official policy.  Plaintiff does not produce evidence of any policy, officially adopted and promulgated

5  by the MID.  In fact, the evidence reflects that Defendant has an official policy that prohibits

6  employment discrimination, including discrimination based on sex or race.

7               (B)      Long Standing Policy or Widespread Custom or Practice

8        Plaintiff argues that MID has a "widespread practice" of disregarding it own

9  employment/personnel policies.  (Doc. 103, Opposition p.28.)   Plaintiff argues it is the custom and

10 practice of MID to not enforce, train or comply with its own policies that created the racial

11 discrimination experienced by plaintiff.[8]

12       In the absence of a formal governmental policy, a plaintiff must show a "longstanding practice

13 or custom which constitutes the standard operating procedure of the local government entity." *Trevino*

14 *v. Gates*, 99 F.3d 911, 918 (9th Cir.1996), *cert. denied*, 520 U.S. 1177 (1997). The custom must be so

15 "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id.*  "Liability

16 for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon

17 practices of sufficient duration, frequency and consistency that the conduct has become a traditional

18 method of carrying out policy." *Id.*

19       MID argues that in a §1981 claim, plaintiff must show that the race-based discrimination he

20 suffered as a result of an official policy or custom.  MID argues that there is no evidence that the District

21 had a practice or policy of race discrimination in employment.

22       MID relies upon its formal non-discrimination policy, but it is well-established that the routine

23 failure to follow a general policy can itself constitute an actionable custom. *Redman v. County of San*

24 *Diego*, 942 F.2d 1435, 1445 (9th Cir.1991) (en banc), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117

25 _____

26       [8] Plaintiff argues that "[i]n violation of its Policies, MID admits it does not enforce requirements that it post job
   positions, advertise job positions, actively recruit minorities and atone for past discrimination, test employees' knowledge
27 and qualifications prior to hiring or promoting, conduct competitive interviews to identify qualified individuals for job spots,
   obey the Affirmative Action policy, hire relatives, or enforce the Policies regarding non-discrimination in hiring, promotion
28 and employment."  (Doc. 103, Opposition p. 28.)

L.Ed.2d 137 (1992). A policy can be one of action or inaction. *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).  "The continued adherence by policymakers 'to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action--the 'deliberate indifference'--necessary to trigger municipal liability." *Long*, 442 F.3d at 1186.

Here, plaintiff has pointed to instances of failure to follow policies which raise issues of fact that demotions and employment-related conduct were violative of his constitutional rights.  Despite the MID formal policies, plaintiff has produced evidence of incidents of gender preference and possible race preference based upon routine failure to follow acceptable and formal policy. For instance, plaintiff has presented evidence that the MID management were unfamiliar with formal policies. Persons were promoted, included plaintiff, based upon criteria other than that required by promotion/demotion policies. *Gillette v. Delmore,* 979 F.2d 1342, 1346, 1349 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."), *cert. denied*, 510 U.S. 932 (1992). Resolution of whether the MID had in existence a custom or practice of inaction to the detriment of plaintiff involves a fact-intensive analysis of evidence of the existence of the custom. At summary judgment, "[n]ormally, the question of whether a policy or custom exists would be a jury question." *Trevino*, 99 F.3d at 920.  Thus, plaintiff's evidence concerning the apparent belief of the management that gender preference and racial comments, and disregard of contrary written policies, were acceptable provide a basis for an inference of a widespread custom.

(C)     Final Policymaking Authority

Plaintiff argues that liability is further premised upon a decision of a "final policymaker." Plaintiff argues Jem Brown was a "final policy maker."  Jem Brown was the supervisor of the Customer Services Group and plaintiff's supervisor when he demoted plaintiff.  (Doc. 103, Opposition p. 29; Doc. 110 Tumbling Decl. ¶20.)

Absent a policy or custom, a municipality may still be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality) ("[O]nly those

municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.").

MID argues that the employment decision were not made by a final policy maker.  The fact that a city employee has independent decision-making power does not render him a final policymaker for purposes of municipal liability. MID argues that the final policy maker was Garith Krause.

The identification of policymaking officials is a question of state law. *Christie*, 176 F.3d at 1235. In this case, the relevant areas of policy making are employment-related decisions, particularly demotions and promotions.  Neither party has cited the relevant state law to determine who is a policy making official in personnel matters.  "[T]he identification of those officials whose decisions represent the official policy of the local government unit is ... a legal question to be resolved by the [court]" before trial.  *Christie*, 176 F.3d at 1235.  "The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83, 106 S.Ct. 129 (1986).

For purposes of *Monell* liability, when determining whether an individual has final policymaking authority, "we ask whether he or she has authority in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (emphasis added). For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the District. For example, in *Jett v. Dallas Indep. Sch. Dist.*, the plaintiff contended that he was transferred because of his race. In determining whether a school district superintendent was a final policymaker, the Court focused on the question of whether the superintendent "possessed final policymaking authority in the area of employee transfers." 491 U.S. 701, 738, 109 S.Ct. 2702; *see Christie*, 176 F.3d at 1236-37 (to determine whether an official is a final policymaker, "courts consider whether the official's discretionary decisions are 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the municipality's authorized policymakers.' ")

Plaintiff argues that Jem Brown admits he is a policy maker for the Customer Services

1    Department.  Plaintiff argues that Manager Jem brown had primary oversight and supervisory control

2    of the Customer Services Group.  Plaintiff argues that General Manager Garith Krause testified that he

3    delegated control over the Customer Service Group to Jem Brown and that he had policy making

4    decisions over the Group.

5           Plaintiff's argument, however, equates Jem Brown's final <u>decisionmaking</u> authority with that

6    of final <u>policymaking</u> authority on behalf of MID. "If the mere exercise of discretion by an employee

7    could give rise to a constitutional violation, the result would be indistinguishable from respondeat

8    superior liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107

9    (1988); see *also Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 & n. 12, 106 S.Ct. 1292, 89 L.Ed.2d

10   452 (1986).  Plaintiff has not offered evidence that Jem Brown was a policy <u>maker</u>, as opposed to a

11   decision maker.  *See Gillette v. Delmore*, 979 F.2d 1342, 1350 (9th Cir.1992)(holding that a fire chief

12   that possessed discretionary authority to hire and fire employees was not responsible for establishing city

13   employment policy).  MID does not dispute that Jem Brown has authority to make certain employment

14   decisions but argues that he is not a "policy maker."  Indeed, plaintiff's evidence focuses upon Jem

15   Brown's authority to <u>make decisions</u>, but does not point to evidence he makes employment policies for

16   MID.  This is corroborated by the evidence of the written employment actions involving plaintiff's

17   demotions which were signed, and approved, by other individuals at MID.

18          Plaintiff has not cited any state law which establishes that a person in Jem Brown's position is

19   an employment policy maker for MID.  Plaintiff has burden of proof of his elements. The party opposing

20   the motion must submit evidence sufficient to establish the elements that are essential to that party's

21   case, and for which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322. Here,

22   plaintiff has the burden of proof that the employment decision was the result of a final policymaker.

23   Plaintiff's evidence does not show that Jem Brown is a policy maker, as opposed to a decision maker.

24   Plaintiff has failed to carry his burden by either citing state law under which Jem Brown may be

25   considered a policy maker, or by producing evidence in which Jem Brown made policy decisions.

26          **4.      Issues of Fact for §1981 Claim**

27          The Ninth Circuit applies the same analytical framework for §1981 claim as a Title VII claim.

28   *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir.1987) (applying Title VII standards to a 42

U.S.C. § 1981 claim).  The "crux" of disparate treatment claims is "the elusive factual question of intentional discrimination." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1180 (9ᵗʰ Cir. 1998).  "[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact."

Because the Court has found a factual question as to the claims of discrimination under Title VII, the claim under §1981 likewise raises issues of fact.

**E.   Retaliation Claim**

Plaintiff claims that defendant violated the anti-retaliation provisions of Title VII and the California FEHA in retaliating against him for complaining about racial discrimination and gender discrimination.  (Doc. 1, Complaint ¶74.) These statutes prohibit employers from taking adverse actions against employees who complain about discrimination in the work place. Title VII provides that it is an:

> unlawful employment practice for an employer to discriminate  against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, . . . 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation under Title VII, "[t]he plaintiff must show (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir.1989); *see Flait v. N. Am. Watch Corp.*, 3 Cal.App.4th 467, 476, 4 Cal.Rptr.2d 522 (1992)).

The legal standard for a retaliation claim is the same under Title VII and the FEHA.  *Surrel v. California Water Serv. Co.*, 518 F.3d 1097, 1107 (9ᵗʰ Cir. 2008). Under the burden-shifting scheme of Title VII and the FEHA, after the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action.  *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9ᵗʰ Cir. 2001).   If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation.  *Winarto,* 274 F.3d at 1284.  Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the

1    employer's proffered explanation is unworthy of credence.  *Winarto,* 274 F.3d at 1284.  To establish

2    pretext, "very little" direct evidence of discriminatory motive is sufficient, but if circumstantial evidence

3    is offered, such evidence has to be "specific" and "substantial."  *Id.*

4          Defendant argues that plaintiff cannot show he engaged in a protected activity.  Plaintiff argues

5    in his opposition that he engaged in the following protected activity:

6         -    complained in April 2005 to Jem Brown and Robert Blum about gender discrimination.

7         -    in August 2007, complained to Robert Blum about race discrimination.

8         -    repeated complaints to General Manager Garith Krause when prior complaints went

9                 unaddressed.

10        -    complained throughout his employment until June 27, 2007 of gender and racial

11                discrimination.

12        -    complaints continued until he was demoted to the field.   (Doc. 103 Opposition, p.31.)

13   **1.     Plaintiff's Discovery Response**

14         In its reply brief, MID argues that none of these specific complaints was provided in plaintiff's

15   answer to interrogatories.  Particularly, when asked in Interrogatory No. 21 to "describe each complaint"

16   made, plaintiff answered:

17            "I do not recall any dates at this time, but I had multiple conversations
              with Mike Higgins about Veronica Cavazos. I had multiple conversations

18            with Jem Brown about Linda Davidson and Kristine Morris not sharing
              information with me. I also talk [sic] to Bob Blum about Linda and

19            Kristine not sharing information with me, and I talk [sic] with him about
              Mike Higgins verbally harassing me. I also had  conversations with

20            Garith Krause about Mike Higgins having his hand down Veronica's
              blouse.  Discovery in this matter is ongoing and Plaintiff reserves his

21            right to amend his response." (Fact 77, Exhibit 48.)

22   MID argues that this interrogatory response is vague and fails to provide any specifics about race and

23   gender discrimination.  MID argues that the more specific complaints in plaintiff's opposition should

24   be excluded pursuant to Rule 37(c)(1)'s self-executing evidentiary sanction for failure to supplement

25   any response to his interrogatory.

26         MID's argument goes to the issue of whether plaintiff can demonstrate he engaged in "protected

27   activity."  According to the interrogatory response provided in discovery, plaintiff complained about (1)

28   persons not sharing information, (2) unspecified "verbal harassment," (3) Higgin's hand down a female's

blouse.  In his opposition, however, plaintiff said that he complained about substantially different conduct - race and gender discrimination.  Certainly, at the time plaintiff answered the interrogatory, he knew to whom he had complained and about which topics, yet failed to disclose the information. Pursuant to Rule 26(e), a party has a duty to supplement or correct earlier interrogatory answers upon learning that the earlier answer "in some material respect . . . incomplete or incorrect."  Plaintiff offered no justification in his opposition or explanation for the noted discrepancy in the evidence.

The Court then requested the parties supplement their briefing as to whether an evidentiary sanction was warranted, under Rule 37, for plaintiff's purported failure to comply with the supplemental disclosure provisions of Rule 26(e)(1).

Plaintiff filed a supplemental brief explaining that while he did not supplement his interrogatory response, he had testified in his deposition as to the incidents of his complaints about racial and gender discrimination.  Plaintiff argues that supplementation was not required pursuant to Rule 26(e)(1)(A), because the information had been provided by incorporating the deposition into his interrogatory answer.

The duty under Rule 26(e) to supplement applies only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1)(A).  The Advisory Committee Notes (1993) to Rule 26(e) clarify the "otherwise" clause requirement: "There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition."

Plaintiff argues that in discovery, he cited to his deposition transcript wherein he informed management that he felt he was discriminated against on the basis of race and gender.  (Doc. 110, Exh. 412 Tumbling depo. P.275 et seq.)  The Court notes that plaintiff's deposition, however, was taken before he responded to the interrogatories.  His deposition was taken on October 6 and 7, 2009 and he responded to the interrogatories on October 30, 2009.  In this situation, where the deposition preceded the interrogatory responses, plaintiff is not relieved of his obligation to properly respond and to supplement under Rule 26(e).  The specific complaints he made were not "otherwise" made know to defendants because the interrogatory answer was after the deposition.  Plaintiff was required provide

1    complete information.[9]

2         Further, the fact that plaintiff "incorporated by reference" the entirety of his deposition into his

3    interrogatory response does not relieve him of his obligations under Rule 26(e). The duty to supplement

4    or correct prior disclosures or discovery responses arises "if the party learns that in some material respect

5    the disclosure or response is incomplete or incorrect." Rule 26(e)(1)(A).  The interrogatory responses

6    were provided after the deposition testimony and thus were required to be complete.

7         A plaintiff may be relieved of the failure to disclose the required information if plaintiff was

8    substantially justified or the failure is harmless.  Plaintiff has the burden of proving he was substantially

9    justified and the harmlessness.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th

10   Cir. 2001).  Plaintiff has not argued that he was substantially justified in failing to supplement.  His

11   position is that he did not need to supplement, at all, because he was deposed previously and he then

12   incorporated the deposition into his interrogatory response. The Court therefore finds plaintiff was not

13   substantially justified in failing to supplement his interrogatory response.

14        Next, the Court must consider whether the failure to supplement is harmless.  To determine

15   harmlessness, a court should consider five factors: whether  the opposing party was prejudiced, the

16   public policy favoring disposition of cases on their merits, the availability of less drastic sanctions, the

17   court's need to manage its docket, and the public's interest in expeditious resolution of litigation. *Wendt*

18   *v. Host Intern., Inc.*, 125 F.3d 806 (9th Cir. 1997).

19        Applying the five factors, the prejudice to defendant that would result from allowing plaintiff

20   to alter drastically the scope and nature of his claims at this point far outweighs the factors which might

21   favor allowing plaintiff to enhance his retaliation claim.  A party is entitled to know all of the facts and

22   evidence that underlie the opposing party's case, long before dispositive motions.  The inadequately

23   disclosed facts which form the basis of the retaliation claim were critical for defendant to properly

24   
_____

25        [9] The Court notes that Rule 33 requires that each interrogatory must be responded to "separately and fully." An
     answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other
26   documents, or to other interrogatories. *Batts v. County of Santa Clara*, 2010 WL 1027990 (N.D.Cal.2010); *Anderson v.
     Fresno County, Human Services System*, 2007 WL 1865657, 3 (E.D.Cal.2007) (When a party propounds an interrogatory
27   that requests an answer to a question, a party responds inappropriately by simply designating documents, because the
     interrogatory did not call for records.); *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 FRD 682, 686 ( (D
28   KS 1991) ("see page 44 of Jones deposition transcript" improper).  Incorporation by reference is an improper form of answer.

prepare its defense.  While public policy favors disposition of cases on their merits, that policy must be balanced with the liberal disclosure and discovery policies of the Federal Rules of Civil Procedure. Requiring the parties to comply with the Rules of Civil Procedure and with the court's scheduling order promotes achieving such goals by giving full disclosure to the parties, minimizing the cost and delay of discovery and eliminating the need for unnecessary trial preparation.  Plaintiff merely said the facts are somewhere "in my deposition" and this is a failure to properly respond.  The Court finds that the failure to supplement and fully respond to the interrogatory are not harmless and cannot be corrected by less drastic measures at this dispositive motion stage.  Therefore, pursuant to Rule 37(c), the Court limits the retaliation claim to the facts in his answer to interrogatory 21.

### 2.     No issue of Fact as to Protected Activity

For protection against retaliation, an employee must have opposed an employment practice made unlawful by the statute.  42 U.S.C. § 2000e–3(a); Gov.C. § 12940(h).  The opposition must be to a policy or practice of an employer rather than its subordinates. *Silver v. KCA, Inc.*, 586 F.2d 138, 140–141 (9th Cir. 1978) (opposition to coworker's racial slurs that were never reported to employer was not opposition to an employment practice and therefore outside coverage of retaliation provision).

Plaintiff has not raised an issue of fact that he engaged in protected activity.  Plaintiff complained about (2) persons not sharing information, (2) unspecified "verbal harassment," (3) Higgin's hand down a female's blouse.[10]  Plaintiff's complaints that Linda Davidson and Kristine Morris would not share information with him do not rise to "protected activity," under Title VII or the FEHA.  There is no inference that failure to share employment information is a "prohibited act."  Further, plaintiff does not support this claim that his complaint for "verbal harassment" was based upon any protected basis.

### 3.     No Causal Link Between the Protected Activity and the Adverse Employment Decision

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities*

---

[10] In any event, the evidence shows that these complaints are barred by the statute of limitations, having occurred in 2004 through 2006.

*Division/Residential Management Branch*, 704 F.Supp.2d 859 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)).

While plaintiff complained about Higgin's hand down a female's blouse, and arguably, this is a complaint based upon sexual harassment, there is no evidence that he was retaliated against based upon this complaint.  It is undisputed that Higgins was not involved in plaintiff's demotion to Supervisor of Water Operations in May 2006.  (Doc. 97, Joint Facts #38.)  It is also undisputed that Higgins was not involved in plaintiff's demotion to Chemical Spray Technician.  (Doc. 99, Exh. 35, Personnel Action.)  Therefore, plaintiff has failed to raise an issue of fact that he engaged in protected activity for which he was retaliated.

**E.     Failure to Prevent Discrimination and Harassment under the FEHA**

Plaintiff's fifth claim is pursuant to the FEHA for failure to prevent discrimination and harassment.  Defendant argues the if the court grants summary judgment on all other discrimination and harassment claims, it must grant summary judgment on this claim as well.

Government Code section 12940(k) provides that it is unlawful for "an employer ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." The California Supreme Court has stated that FEHA "makes it a separate unlawful employment practice" for an employer to violate section 12940(k). *State Dept. of Health Servs. v. Super. Ct.*, 31 Cal.4th 1026, 6 Cal.Rptr.3d 441, 79 P.3d 556 (2003).  Plaintiff must establish a claim for discrimination before a failure to prevent discrimination claim can be stated. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir.2004); *Trujillo v. North County Transit Dist.*, 63 Cal.App. 4th 280, 289 (1998) ( "[T] here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen") (internal quotation marks omitted).

To the extend the Court has ruled claims on discriminatory conduct are untimely which form the basis for this claim, the conduct is barred under this claim as well.

**F.     Whistleblower Action Pursuant to Labor Code §1102.5**

Plaintiff's sixth claim for relief alleges whistle blower retaliation under California Labor Code §1102.5.  Plaintiff was transferred to the Chemical Spray Technician position on June 27, 2008. Plaintiff alleges this transfer was in retaliation for his "whistleblowing" about a Board member's receipt of

1   irrigation water at a lower rate than permitted under MID regulations.

2       Cal. Lab.Code § 1102.5 protects employees who report or merely object to unlawful business

3   practices by making it unlawful to retaliate against them.  An employer may not retaliate against an

4   employee for disclosing information to a government or law enforcement agency, where the employee

5   has reasonable cause to believe that the information discloses a violation of state or federal law, or

6   noncompliance with a state or federal regulation.  Labor Code §1102.

7       Prior to bringing an action under Section 1102.5, a plaintiff is required to exhaust all

8   administrative remedies.  *Campbell v. Regents of Univ. of Cal.,* 35 Cal.4th 311, 317, *cert. denied*, 546

9   U.S. 938 (2005).  The administrative remedy for a Section 1102.5 claim is the presentment of a

10  government tort claim.

11      California Government Code §945.4 provides that no suit for money or damages may be brought

12  against a public entity until a written claim has been presented to the public entity, and has been acted

13  upon by the public entity or deemed to have been rejected.  The filing of a government tort claim

14  satisfies the exhaustion requirement, absent any other administrative remedy, such as an internal

15  grievance procedure.  *See Neveu v. City of Fresno*, 2005 WL 2562717, at *6 (E.D.Cal. 2005) ("At the

16  pleading stage, Plaintiff's allegation that there were no adequate internal administrative remedies and

17  that he exhausted the only available administrative remedy (i.e., the filing of a government tort claim),

18  is sufficient to survive a motion to dismiss."); *Campbell*, 35 Cal.4th at 333 (plaintiff failed to exhaust

19  internal grievance procedure before filing claim).

20      The limitations period for presenting a tort claim is six months.  Claims for personal injury

21  (including wrongful death) or property damage must be presented "not later than six months after the

22  accrual of the cause of action." Gov.Code § 911.2.  A cause of action for tortious discharge or other

23  challenged employment act accrues upon the occurrence of the challenged employment act. *Romano v.*

24  *Rockwell International*, 14 Cal.4th 479, 491 (1996).

25      Here, plaintiff did not file a government claim with MID until September 9, 2008, which is 15

26  months after the alleged retaliatory conduct, when he was demoted to a Chemical Spray Technician.

27  Since plaintiff did not timely file a government claim, the cause of action arising from this conduct is

28  time-barred.

31

1   Plaintiff does not dispute that he was required to present a government tort claim prior to filing

2   suit.  (Doc. 103, Opposition p. 32.) Plaintiff does not argue that he timely submitted a claim.  Rather,

3   plaintiff argues that MID should be equitably estopped from arguing that plaintiff untimely presented

4   a government claim.  (Doc. 103, Opposition p.32.)  Plaintiff argues, as he did *supra*, that individual MID

5   Board members contacted him and "instructed him" to not take any action and he would be reinstated.

6   (*Id.*)  He argues that he was induced not to file a claim, and relied upon the Board Members'

7   representations.

8   For the same reasons as the Court found that equitable estoppel does not bar the statute of

9   limitations in the Title VII and FEHA, the Court finds that the equitable estoppel does not bar the

10  defense of failure to exhaust administrative remedies.  Accordingly, summary adjudication will be

11  granted on this claim for failure to exhaust administrative remedies.

12  ### CONCLUSION

13  For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, MID's motion as

14  follows:

15  -   GRANTS the motion for summary adjudication on the first and third claims for relief

16      under Title VII as to discriminatory conduct which occurred more than 300 days before

17      the filing of the June 10, 2008 EEOC Charge.

18  -   GRANTS the motion for summary adjudication on the second, fourth and fifth claims

19      for relief under the FEHA as to discriminatory conduct which occurred more than one

20      year before the filing of the June 10, 2008 EEOC Charge.

21  -   GRANTS the motion for summary adjudication on the fourth claim for relief for

22      retaliation.

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1    -    GRANTS the motion for summary adjudication on the sixth claim for relief under Labor

2         Code §1102.5 for failure to exhaust administrative remedies.

3    -    DENIES, in part, and GRANTS, in part, the motion for summary adjudication on the

4         seventh claim for relief under 42 U.S.C.§1981, as more fully set forth in the order.

5

6         IT IS SO ORDERED.

7    **Dated:    September 27, 2010**              /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28